HELEN S. HOLMES v. ALEXANDER CATHCART and Others.[1]

January 9, 1903.

Nos. 13,198—(174).

**Real Estate Agent.**

An agent who is authorized by his principal to sell or exchange the property of the latter upon specified prices and terms is in duty bound, upon learning that a more advantageous sale or exchange can be made, the facts concerning which are unknown to the principal, to communicate the same to him before making the sale as expressly authorized, and his failure to do so amounts to a fraud in law.

Action in the district court for Ramsey county to recover from defendants, Alexander Cathcart and Pioneer Apartment House Company, $10,000 damages for alleged fraud upon plaintiff committed by defendant Cathcart, in collusion with defendant company, while acting as plaintiff's agent in the exchange of real estate. The case was tried before Brill, J., who, upon conclusion of plaintiff's testimony, directed a verdict in favor of defendants. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed, and new trial granted.

*William G. White,* for appellant.

*John F. Fitzpatrick,* for respondents.

BROWN, J.

The facts in this case are substantially as follows: Plaintiff, who resides at Buffalo, New York, was the owner of twelve houses in the city of St. Paul, all of which were clear and free of incumbrance. The houses were somewhat out of repair, and, to render them habitable, certain expenses were necessary to be incurred; and, to avoid that expense, plaintiff was anxious to exchange the houses for other property. Defendant Cathcart was her agent, and acted for her in the care and management of the houses, collecting rents, making needed repairs, placing insurance on the property, and, in a way, her general representative at St.

[1] Reported in 92 N. W. 956.

Paul. He undertook to make an exchange of the property, and at one time had under consideration a proposition which he thought might result beneficially to plaintiff; and he induced her to come on, with her husband, from her home in Buffalo for the purpose of an examination and inspection of the property proposed in exchange. The exchange did not take place, but later on Cathcart secured from one Horeish a proposition to exchange a brick block owned by him in the city of St. Paul, which was incumbered by a mortgage of $15,000, for plaintiff's twelve houses; but there were back taxes against the block and overdue interest on the mortgage to the amount of $1,600, which plaintiff would be required to pay to effect a trade.

Pending the consideration of the proposition by plaintiff,—the evidence does not show that it had been rejected,—Cathcart procured from Horeish a further contract by which the latter agreed to accept two of plaintiff's houses, free and clear of incumbrance, and the sum of $200, for his property, subject to the mortgage and the payment of the back taxes and interest. At about this time —the precise date does not clearly appear—he entered into some sort of an agreement with the Pioneer Apartment House Company, by which that concern agreed to advance all money necessary to pay the back taxes and interest against the Horeish property, over and above the sum of $1,000, in consideration of which it was to receive ten of the houses. Cathcart then informed plaintiff that he could effect an exchange of her twelve houses for the Horeish block, subject to the incumbrance, interest, and taxes (plaintiff to pay $1,000, instead of $1,600, according to the previous proposition); and he subsequently informed her that the balance of the $1,600 necessary to pay the back taxes and interest in full would be advanced by a third party, who was to receive some of the houses. She was not informed that Horeish was willing to exchange the brick block for two of her houses and the sum of $200, subject to the mortgage and the taxes and interest. She understood all along that all of her houses were to be transferred and exchanged for that property, and she was not informed at any time that the apartment house company was to receive ten of her houses for the amount of money it was to advance. She finally

accepted this proposition, deeded the houses to the Pioneer Apartment House Company, and paid the $1,000 toward the back taxes and interest. The balance necessary to pay the same in full was paid by the apartment house company. The precise amount paid by it is not shown by the record, but it was probably in the neighborhood of $1,200 or $1,400, including a commission to Cathcart of the sum of $500.

A verdict was directed for defendants at the trial in the court below when plaintiff rested. Defendants were not required to offer any evidence, and the facts in defense of the action, or upon which they would rely if required to defend, do not appear. This action was brought against both defendants,—Cathcart, the agent, and the apartment house company,—on the theory that those parties were in collusion, and that plaintiff was entitled to recover against both for any damage she had suffered for the failure of her agent to disclose to her all the material facts in reference to the exchange of the properties.

The evidence is insufficient, perhaps, to show a collusive agreement between the defendants, though it is somewhat strange, or at least not wholly clear, that the apartment house company should receive ten of plaintiff's houses for the nominal consideration of about $1,200, when they were worth at least the sum of $4,000. But at the trial below defendants joined in a motion to direct a verdict, which motion was granted; and, if the court erred in granting the motion as to either, a reversal must apply to both, and the case will be left as though no trial had ever been had, and must be tried again as to both defendants.

The theory on which the learned court below directed a verdict was that the plaintiff had not been injured by any act on the part of defendants, and she could not recover; that, as she was willing to part with all her houses in exchange for the brick block, it was immaterial to whom they were in fact deeded,—whether to Horeish or to the apartment house company; that she lost nothing by the transaction, and has no cause of action. We think the court was in error. It is not controlling whether plaintiff was willing, or not, to make the exchange on the terms proposed to her. The action involves the duty of an agent when acting for his principal,

and whether he performed that duty in accordance with the law. The principal may authorize his agent to sell or exchange his property, but it does not necessarily follow that the agent, by carrying out the specific instructions given him, fully performs his duty, and is relieved from liability. He is bound to the exercise of the most perfect good faith, and to keep his principal informed of facts coming to his knowledge affecting his rights and interests. If, after receiving instructions to sell property on certain specified terms, the agent learns that other and more advantageous terms can be obtained, it is his plain duty, and he is under every legal and moral obligation, to communicate the facts to the principal, that he may act advisedly in the premises. As stated by Chief Justice GILFILLAN in Hegenmyer v. Marks, 37 Minn. 6, 32 N. W. 785: Upon this contract of agency, we are of the opinion that when the agent learned of a fact affecting the value of the property, and of which fact he knew the principal was ignorant when she fixed the price, and if the agent had reason to believe that, had she known the fact, she would have fixed a higher price, then good faith towards his principal required him, and it was his legal duty, to disclose the fact to her before he proceeded to sell, so that she might, if so disposed, fix the selling price in accordance with the actual condition of things. This being so, his selling upon the basis of the price first fixed, without disclosing to her the fact he had learned, was, of course, a fraud upon her. That case is in accord with the unanimous voice of the authorities. Mechem, Ag. § 538; 1 Am. & Eng. Enc. (2d Ed.) 1069; Arrott v. Brown, 6 Whart. 1; Devall v. Burbridge, 4 Watts & S. 305; Harvey v. Turner, 4 Rawle, 220; Tilleny v. Wolverton, 46 Minn. 256, 48 N. W. 908.

Plaintiff was not informed at any time prior to the closing of the transaction that she could obtain the brick block for two of her houses and the payment of about $1,600 in money, and the question arises whether defendant Cathcart should have communicated that fact to her. If, as now claimed by plaintiff, that bargain was a better one for her,—more beneficial in its results,—it was the clear duty of Cathcart to communicate the facts to her; and if, by his failure to do so, plaintiff was damaged, she is entitled to recover whatever loss she actually suffered. Whether defendant

did fail in his duty in this respect is, of course, a question of fact, which we do not attempt to pass upon; but we do hold that the evidence offered by plaintiff on the trial was such as to require a finding on the question by the trial court, or the submission of the same to a jury. The measure of her relief would be the actual damage suffered in consequence of defendant's failure of duty. The case must therefore be reversed.

It was also claimed by plaintiff that she was entitled to the commission received by defendant Cathcart, her agent, and that the court erred in holding otherwise. It appears, without dispute, that Cathcart did receive from the apartment house company a commission of $500 for his services in effecting the exchange of properties. We do not concur with plaintiff's counsel, however, that plaintiff is entitled to any portion of it. The evidence disclosed by the record fairly shows that plaintiff contemplated that defendant should receive some sort of a commission, and this is clearly shown by the correspondence between the parties. As a condition to the acceptance of the final offer to exchange the properties, she distinctly stated that it must include all commissions to be received or claimed by Cathcart. It therefore appears from the record that Cathcart was entitled to negotiate for and accept and receive a commission for his services in the premises, and this with the knowledge and consent of plaintiff. And having done so with her express consent, he is entitled to retain the same.

Order reversed and new trial granted.