DAVID BORST v. H. T. LYNCH, Appellant.

133 567
f141 487

Sale of land on commission: UNAUTHORIZED RETENTION OF PART
1 PROCEEDS: LIABILITY. A real estate broker who agrees to sell his principal's land for a stated commission must account for the entire amount realized on the sale whether in cash, or part cash and part security; and if the sale is in fact for more than he reports the excess being in securities which he has appropriated to his own use, without his principal's knowledge, he must account for the same at its face value irrespective of its actual value.

Exclusion of evidence: HARMLESS ERROR. Exclusion of evidence
2 offered in support of a fact shown by the uncontradicted evidence of other witnesses admitted without objection is not prejudicial.

*Appeal from Buchanan District Court.*— HON. FRANKLIN C. PLATT, Judge.

SATURDAY, MARCH 9, 1907.

ACTION to recover from defendant as plaintiff's agent for the sale of land the amount received for said land in excess of the sum reported and accounted for by defendant, and also the amount of commission paid defendant for effecting such sale. Verdict and judgment for plaintiff. Defendant appeals.— *Affirmed*.

*E. E. Hasner* and *Charles E. Ransier*, for appellant.

*Cook & Cook* and *R. E. Leach,* for appellee.

McClain, J.— Plaintiff listed his farm with defendant, as real estate agent, for sale at $60 per acre, cash, agreeing to pay $1 per acre for commission. The evidence for plaintiff tended to show that a sale was reported by defendant to plaintiff as made to one Holmes for $60 per acre, and that payment was made to plaintiff accordingly, the agreed commission being paid by plaintiff to defendant; whereas, in fact, the defendant sold the land to Holmes for $65 per acre, and concealed from plaintiff the fact that more than $60 per acre had been thus received. The evidence for defendant tended to show that the actual sale was represented to have been made, and was, in fact, made to one Gooch for $60 per acre, and that, while there were negotiations for a sale to Holmes at $65 per acre, such sale was not in fact effected until afterward, and then not entirely for cash, but for one part cash paid by Holmes, another part cash raised by a first mortgage on the land given by Holmes, and a third part represented by Holmes' note secured by a second mortgage on the land. According to the evidence on behalf of defendant, Gooch was a land agent, who brought Holmes from Illinois to look at the land, and with whom defendant was to divide the commission and also the amount in excess of $60 per acre, which should be realized from the sale to Holmes, or, if Holmes should not finally take the land at $65 per acre, then Gooch should furnish the money for completing the payment for the land at $60 per acre on the basis of a cash sale.

The assignments of error predicated on the giving and refusal of instructions are based on the contention that, as

1. SALE OF LAND ON COMMISSION: unauthorized retention of part of proceeds; liability.

Holmes was unable to pay the amount of cash required for the purchase of the land, defendant was at liberty to make an arrangement with Gooch by which plaintiff should be assured of the cash price for which he had authorized de-

fendant to sell the land, and a sale in the interest of defendant and Gooch should be made to Holmes without plaintiff's knowledge for $65 per acre, a part of the purchase price being payable to defendant and Gooch on time, secured by a second mortgage, and that, in any event, defendant could be held to account to plaintiff only for the value of the second mortgage security at the time it was taken; there being some evidence to show that this second mortgage security had no marketable value at the time it was taken.

But the court instructed the jury that, if defendant had reasonable grounds for believing that he could sell the land for $60 per acre cash, or $65 per acre on part cash and deferred payments, it was defendant's duty to inform the plaintiff of the facts, and that if he withheld such information and sold it to Holmes for $65, partly in cash and partly on deferred payments, accounting only for a cash sale at $60 per acre, then he was bound to account further to plaintiff for the difference between $60 and $65 per acre. This instruction was plainly right. It requires of the defendant nothing more than the plain duty which an agent owes to his principal. *Holmes v. Cathcart,* 88 Minn. 213 (92 N. W. 956, 60 L. R. A. 734, 98 Am. St. Rep. 513); *Tyler v. Sanborn,* 28 Ill. 136 (21 N. E. 193, 4 L. R. A. 218, 15 Am. St. Rep. 97). It is conceded in defendant's answer that he sold the land to Holmes for $65 per acre, and the evidence shows that, whatever may have been the marketable value of the second mortgage security when he took it, he had before the trial realized its face value, or it had become worth its face value in cash in his hands. The agent is not at liberty to speculate in his principal's property without the principal's knowledge and retain the possible benefits, but he must account for whatever profit he ultimately realizes through his breach of faith, and it matters not what the second mortgage security was worth when defendant took it. He must account for what he has realized from it. It is wholly immaterial, also, whether he has agreed to divide his profits

with another. To justify his dealing with Gooch and Holmes with a view of ultimately realizing more than the amount for which he accounted to the plaintiff, he must have disclosed to plaintiff all the facts. Not having done so, he must account for what plaintiff might ultimately have received had he authorized the sale in his own behalf which defendant in fact made to Holmes without plaintiff's knowledge. The views which we have expressed dispose of all the alleged errors in the giving or refusal of instructions.

Error is also assigned in the refusal of the court to sustain objections to questions asked defendant on cross-examination relating to the price at which Holmes subsequently sold the land, but as the fact had already been shown by other witnesses without objection, and there was no conflict in the evidence as to that matter, no possible prejudice could have resulted from the cross-examination.

2. EXCLUSION OF EVIDENCE: harmless error.

The judgment is *affirmed*.