J. H. MERRILL, J. W. GARNER AND CALVIN MANNING, Appellees, v. J. B. SAX, Appellant.

**Principal and agent:** SECRET PROFIT: ACCOUNTING. An agent or confidential representative can not secretly profit by the transaction but is required to account to his principal for all such profits, even though received in a transaction relative to the subject matter in excess of his authority, and this duty is not relieved by accounting for the full price at which he was authorized to make the sale of the property; so that where defendant, an owner with others of certain corporate stock, was appointed by them to complete a transfer of all the stock, including his own at a price agreed upon, each to pay his proportionate share of the expense, demanded and received of the purchaser as a condition precedent to delivery a large sum in addition to the agreed purchase price, he could not secretly

retain the same as a commission but must account to his associates therefor.

Same: GRATUITOUS AGENCY. The fact that an agent acts gratuitously does not relieve him from the obligation to account to his principal for all profits made out of the subject matter of his agency; but where one of several owners of corporate stock is appointed by them to close a sale of the whole, less than which the purchaser would not buy, at the expense of all in proportion to their interests, the agency is not gratuitous.

Same: COMPENSATION OF AGENT. The express agreement by which one of several owners of corporate stock is to have his expenses in closing a sale of their combined holdings, excludes the idea that he is to be compensated for his services; but even if he was entitled to compensation in addition to his expenses, that fact would not relieve him from the obligation to account to them for any sum received from the purchaser in addition to the agreed purchase price.

Same: FRAUD. Although an agent for the sale of corporate stock demanded from the purchaser a sum in addition to the agreed purchase price, as a condition precedent to its delivery, and the purchaser knowing his rights yielded to the demand, it did not constitute a legal fraud.

Principal and agent: ACCOUNTING. Where one of several owners of corporate stock was authorized to complete a sale of all their interests and they united in paying his expenses incident thereto, a sum demanded and received by him from the buyer in excess of the agreed purchase price of the stock was in effect the price of its delivery, and should be accounted for to the several owners.

*Appeal from Wapello District Court.*—HON. C. W. VERMILLION, Judge.

TUESDAY, NOVEMBER 24, 1908.

REHEARING DENIED SATURDAY, FEBRUARY 20, 1909.

THE opinion states the case.—*Affirmed.*

*Smith & Lewis* and *Jaques & Jaques,* for appellant.

*Tisdale & Heindel* and *Work & Work,* for appellees.

WEAVER, J.—The plaintiffs' case, as stated in their petition, is to the following effect: On December 19, 1905, the Ottumwa Traction & Light Company was a corporation owning certain public service franchises in said city. Certain persons residing in said city, and spoken of in the record as the "Ottumwa crowd," or "Ottumwa parties," including plaintiffs and defendant, owned in varying proportions a majority of the shares of preferred and common stock which had been issued by said corporation and were then outstanding. The remainder of the stock issued was owned by parties residing in St. Louis, Omaha and places other than Ottumwa. These parties residing in Ottumwa were in the habit of consulting together and acting in harmony with reference to the protection and promotion of their several interests in said corporation, of which the plaintiff Merrill was president, and the defendant Sax secretary. All these parties desired to dispose of their stock if a buyer at a suitable price could be found. Late in October, 1905, a representative of H. M. Byllesby & Co., of Chicago, appeared at Ottumwa and made some inquiry or investigation into the affairs of the corporation with a view to the purchase of the stock. While there, he made some suggestion in a tentative way as to the price which his principal would be willing to pay for said stock provided the entire issue could be obtained, and the Ottumwa parties, or those holding the bulk of the stock, including plaintiffs and defendant, met in consultation upon the subject. At that interview it seemed best that negotiations on behalf of said parties be conducted by some representative or representatives acting in the interest of all, rather than by each acting separately, and it was agreed to place the matter in the hands of the defendant, who was to be assisted by Maj. Mahon, one of their number, if assistance was required. Thereupon the de-

fendant and Mahon began negotiation, upon the one hand, to obtain a definite proposition from the proposed purchaser, and, upon the other, to secure the consent or cooperation of the other stockholders residing outside of Ottumwa. On November 7, 1905, Sax entered into a written contract with Byllesby & Co., by which said corporation agreed to pay to Sax the sum of $384,000 for the entire issue of preferred and common stock in the traction and light company; the price being reckoned at the rate of ninety cents on the dollar for the preferred stock and sixty cents on the dollar for the common stock. By the closing paragraph in said contract Mr. Sax states that he will use his best endeavors to make the delivery according to the contract, and that the same should include his own holdings for over $95,000 par value of the preferred stock and over $125,000 par value of the common stock. These last sums mentioned constitute substantially the sum of preferred stock and common stock then held by said Sax, Mahon, and the plaintiffs herein. Sax and Mahon visited and interviewed the stockholders residing in St. Louis and Omaha, and while these stockholders declined to consummate any deal with them or through them, they opened up negotiations with Byllesby & Co. direct and perfected a sale of their shares. To enable Sax to carry out his agreement, the plaintiffs and Mahon entered into a writing, whereby they agreed to deliver to him their respective holdings of the stock at the prices above named. Said writing embodied also the following stipulation: "We agree to deliver these shares of stock to you or any one you may designate upon the terms of the above-mentioned amount, less cost for expense incurred in negotiating said sale, which is not to exceed two percent of the sale price." On December 7, 1905, the negotiations had been so far perfected that defendant, having secured the assignment of the stock of the Ottumwa parties and having the certificates in his possession or under his control

ready for delivery to the purchaser, went to Byllesby & Co. and insisted, as a condition of the delivery of the stock so held by him, that he be paid a sum equivalent to three percent of the entire purchase price of all of the stock. This demand was for a time resisted, and, after an unsuccessful attempt to satisfy defendant by the offer of $3,840, a compromise was reached, by which he was paid the sum of $7,680, and the stock was delivered and the deal closed. On returning to Ottumwa, defendant reported the sale to the parties in interest, and, after deducting the expenses which he and Maj. Mahon had incurred in carrying the deal to a successful conclusion, accounted to the several parties in interest for their respective proportions of the stock sold at the contract price above named. In making said report he concealed or withheld the fact of the receipt of said sum of $7,680, and has never accounted therefor, though it appears that he at some time made it known to Mahon, to whom he paid $2,500. It is the claim of plaintiffs that the defendant in negotiating and completing the sale was not acting for himself only, but as agent of the other Ottumwa stockholders, that his receipt of said sum of $7,680 and the concealment of said transaction from them was a breach of his duty as their representative, and they demand that he make an accounting for the money so obtained. The defendant denies that in conducting said negotiations or in making the said sale he was acting in any manner as agent of the plaintiffs. He pleads also many facts which are largely in the nature of matters of evidence the substance of which is that he undertook the contract with Byllesby & Co. on his own responsibility and that he is under no obligation to account to plaintiffs for the additional sum obtained by him from said purchasers. On hearing the evidence the trial court found for the plaintiffs and entered a decree requiring the defendant to account for the money so received to each of said plaintiffs

in the proportion which their holding of stock bore to the entire amount held by said Ottumwa parties. The defendant appeals.

The record of the testimony is entirely too voluminous to permit its rehearsal in this opinion, even in condensed form. We have read it with the care which its importance demands, and find that it fully sustains the conclusion of the trial court upon all disputed questions of fact. In addition to the positive and direct testimony on part of the plaintiffs, it is impossible to reconcile the admitted conduct of appellant upon any other theory than that he undertook to and did act in a representative capacity for the plaintiffs and his other fellow stockholders at Ottumwa. Such being the conclusion, we have to inquire whether, conceding the existence of that relation, he is liable to account to those whom he represented for the money exacted by him from Byllesby & Co. in excess of the contract price of the stock. Counsel for appellant direct our attention to a line of authorities in support of the proposition that a person may act as agent for both seller and buyer where both parties are aware of his conduct in that respect and consent thereto, and that the agent of the seller may rightfully treat or deal with the buyer with respect to the subject-matter of the agency so long as such conduct or dealing does not conflict with the agent's duty to his principal. The soundness of the doctrine thus stated need not be questioned, but its application to the case at bar can not be conceded. All of the parties, appellees and appellant, were acting jointly in an endeavor to get the best possible price for their stock, and the execution of that purpose was confided to appellant. It was clearly his duty to give to his associates the benefit of his best service in the discharge of the trust confided to him, and to account for the entire amount paid to him by the purchaser. To say that the money in question was not paid to him in consideration of

1. PRINCIPAL
   AND AGENT:
   secret profits:
   accounting.

the sale of this stock, but was in the nature of a commission or payment for services otherwise rendered to Byllesby & Co., is to ignore practically all of the material facts in the case.

In the first place, appellant performed no service as agent for Byllesby & Co. He did not represent that concern in any respect. He did undertake to sell to them an amount of stock substantially equivalent to the entire holdings of the Ottumwa parties for whom he was acting, and to use his best endeavors to procure the sale to them of all the remainder of the stock at a given price. In other words, as between him and Byllesby & Co., it was an ordinary contract of purchase and sale into which not the slightest element or appearance of agency entered. On December 7, 1905, the deal had developed to a point where appellant felt himself in position to demand terms from Byllesby & Co. He had in his possession the stock which had been held by himself, Mahon, and the plaintiffs, and without which the scheme of the purchaser to take in the entire issue and reorganize the corporation could not be effected. Availing himself of this advantage, he impressed upon Byllesby & Co. the belief that the sale would not be carried out unless they paid him a large sum in addition to the contract price, and, yielding to his demand, the money in controversy was paid over to him. To call this exaction a commission is to dress the transaction in a garb it is not entitled to wear. The money so received by him was received for doing the very thing which he had agreed to do and which in good faith to those who intrusted him with their stock he was bound to do, and it would be a most dangerous as well as inequitable rule to permit him to retain the sum so realized and avoid accounting therefor. If A. places his horse in the hands of B., with authority to negotiate a sale to C. on the best obtainable terms, and B., having obtained an offer which he is directed to accept, goes to C., and, while having the horse

ready for delivery, refuses to make it until C. makes him a large additional payment, which he does not report or account for, we think his defense to an action for an accounting will receive little favor in a court of justice, even though he calls the sum thus received a "commission." Let us then bring the illustration a little closer home, and suppose that four different persons each own a horse which he desires to sell, and C. is willing to buy providing he can purchase all of them. To facilitate the deal, the four persons agree that one of their number, A., shall conduct the negotiations; each to pay his proportionate share of the expense which may be thus incurred. Armed with this authority, A. agrees with C. to sell him the four horses for $100 each, and this, being reported to the several owners, is agreed to, and the horses placed in A.'s hands for the consummation of the deal. Thereupon he goes to C. and refuses to make delivery of the property until he has received an additional percentage upon the agreed price, which he chooses to call a "commission." If this demand be submitted to, and he places the money so obtained in his own pocket, concealing the transaction from those associated in interest with him, does A. occupy any more favorable position than he did in the first illustration above used? We think not. If there be any difference, his relation to his associates in the latter deal is of a closer and more confidential nature than was his relation to his principal in the former. They were engaged in a common enterprise, working together to a common end, the disposition of the property of each and all at the best obtainable price, and each was entitled to open-handed frankness and fairness of dealing at the hands of the others, and especially at the hands of the man selected to represent them in the actual negotiations and consummation of the sale. *Getty v. Devlin,* 54 N. Y. 403. To permit an agent or confidential representative to secretly profit by his manipulation of the subject-matter of his agency is to offer a premium

to fraud and breach of faith. The law therefore holds him bound to account to his principal for all such profits, even though they were received by transactions in excess of the authority given him, and this law is none the less imperative because he accounts for the full price for which he was authorized to sell. Story's Agency (8th Ed.) sections 207-214; 1 Clark & Skyles, Agency, sections 406, 417; *Salsbury v. Ware*, 183 Ill. 505 (56 N. E. 149); *Holmes v. Cathcart*, 88 Minn. 213 (92 N. W. 956, 60 L. R. A. 734, 97 Am. St. Rep. 513).

Appellant makes the further point that at most he was acting as a gratuitous agent, and is therefore not to be held to the same strict liability for an accounting; but he was not in any sense of the term acting gratuitously. These persons, as we have seen, were engaged in a common enterprise to dispose of their holdings of stock. As the purchaser wished all or none, the appellant and appellees each had a direct interest in bringing about the sale of the stock of his associates, and their agreement to share with appellant the expense incurred was also a valuable consideration, if any was needed, sufficient to support his express or implied agreement to represent their interests. Moreover, the agent who acts gratuitously is not in any manner relieved from the ordinary obligation upon agents to act in good faith with their principals and to account to them for all profits made out of the subject-matter of their agency. *Salsbury v. Ware*, 183 Ill. 505 (56 N. E. 149).

2. SAME: gratuitous agency.

Finally, it is said in appellant's behalf that the claim oɪ appellees is inequitable because they do not offer to pay him for "his skill and knowledge devoted to carrying through the enterprise and after reaping the full benefits of a satisfactory sale come into court and coldly demand a portion of that which he receives from another as his personal earnings." Counsel overlook the very obvious and very pertinent truth

3. SAME: compensation of agent.

that it was appellant's skill and knowledge and personal service which the law bound him to render to those for whom he undertook to act. The express stipulation by which he was to be reimbursed for expenses incurred excludes the idea of an implied agreement to pay him any more, and, even if he were entitled to payment of a reasonable compensation by appellees in addition to his expenses, that fact would be no justification for his act in secretly obtaining a personal profit out of the matter which he was conducting, or professing to conduct, for their mutual advantage and interest.

Nor can his action in this respect be regarded as a fraud or wrong upon Byllesby & Co. for which he is accountable alone to that corporation. Byllesby & Co. knew that under their contract with appellant they were entitled to the stock held or controlled by him on the terms there specified, and if the purchase was a matter of such importance to them that they preferred to hasten it by yielding to his demand, however unjust, and waive their right to insist upon performance of the agreement according to its terms, there was no fraud perpetrated upon them in the legal acceptation of that word, however such conduct may be rated when tested by the highest standard of business morals.

4. SAME: fraud.

The alternative proposition advanced by the appellant that, if liable at all, his inability is limited to the so-called "commission" received on the sale of the shares held by the plaintiffs is untenable. In the first place, the service performed by him in interviewing and soliciting the stockholders in St. Louis and Omaha, and for which it is argued he could properly receive payment, was done in his representative capacity as agent and associate of the Ottumwa stockholders, who united in paying his expenses so incurred, and for any compensation or profit obtained by him therein he is bound to account. In the next place, it is

5. PRINCIPAL
AND AGENT:
accounting.

perfectly clear that appellant had no lawful claim or demand against Byllesby & Co. (except upon the contract of sale); but being in possession of the stock owned by himself and associates which it was his duty to deliver to said purchasers, he made such delivery the lever or instrument by which the additional money was extracted from them. Byllesby & Co. had already secured the remainder of the stock, and they paid this demand by appellant to secure the delivery of the shares controlled by him. The money so received, by whatever name it may be called, was in substance and effect the price of the delivery of the Ottumwa stock, and it is equitable and just that defendant account to the several owners on that basis.

Other objections urged to the decree are either not borne out by the record, or they necessarily fall with those we have already considered and overruled.

The decree of the district court is right, and it is *affirmed.*