G. F. Leonard v. J. N. Omstead et al., Appellants.

Agency: fraud of agent: accounting. An agent is required to
account to his principal for any profit he may have acquired
from the transaction by concealment of facts which it was
his duty to disclose to enable the principal to deal the most
advantageously; and it is immaterial that the principal has lost
nothing, but the accounting may be had if the agent derived
the secret profit.

Same: proof of agency: evidence. Agency arises out of a con-
tract relation but need not be proven by an express agree-
ment, it may be inferred from the circumstances. In the instant
case the evidence is held to show the relation of agency at
a time when defendant arranged with the party with whom his
principal was exchanging lands to derive a secret profit from
the transaction, and he is held to account therefor

*Appeal from Wright District Court.*—Hon. R. M.
Wright, Judge.

Tuesday, March 9, 1909.

Action to recover from defendant Omstead and his
grantees, F. E. and F. L. Beshy, a tract of land alleged
to have been procured by Omstead as the agent of plaintiff
in fraud of plaintiff's rights. Plaintiff asked that, in the
event of a finding by the court that the Beshys are inno-
cent purchasers and should not be required to surrender
the land to plaintiff, then defendant Omstead be required
to pay in damages the amount for which said land was sold,
less the amount expended by him in procuring the same.
The trial court found that under the evidence the Beshys
were innocent purchasers and entitled to hold the land as
against plaintiff, and further that defendant Omstead had
procured title thereto in fraud of plaintiff's rights while

acting as plaintiff's agent, and that he should account for the amount received by him on sale of the land, and rendered judgment against him in plaintiff's favor for $3,520, with interest. The defendant Omstead, who will be treated as sole defendant in the further discussion of the case, appeals.—*Affirmed.*

*Nagle & Nagle,* for appellant.

*McGrath & Archerd,* for appellee.

McCLAIN, J.—In May, 1905, plaintiff, who is a resident of this State, went to Dickey County, N. D., and there met one Caldwell, with whom he entered into negotiations for the exchange of plaintiff's farm, containing about one hundred and sixty acres, in Iowa, for the farm of said Caldwell, containing about three hundred and twenty acres, in North Dakota. The details of the terms of the exchange are not important, but plaintiff's contention is: That he offered his own farm at a cash value of $70 per acre and took the farm of Caldwell on the representation that it was of the cash value of $25 per acre; that defendant Omstead, acting as plaintiff's agent in the negotiations for the exchange, became aware that Caldwell was willing to dispose of his farm at the cash price of $15 per acre, allowing out of that amount $1 per acre for commission; and that defendant, instead of disclosing this fact to plaintiff, as was his duty, concealed it, and allowed plaintiff to enter into the exchange on the basis of a cash valuation of $25 per acre for Caldwell's farm, having at the time secured an agreement with Caldwell by which defendant was to take plaintiff's farm off Caldwell's hands at such a valuation as would net Caldwell $14 per acre for his North Dakota land. Plaintiff asked by way of equitable relief that defendant and his grantees be required to turn over to plaintiff the land thus acquired by defendant

from Caldwell on being reimbursed the amount of his actual outlay in procuring title thereto, on the theory that defendant as agent was bound to account to plaintiff for all the property or profits accruing to him in the transaction as the result of fraud committed upon plaintiff; but the court, finding the grantees to be innocent purchasers for value, rendered judgment against defendant Omstead for the amount of the proceeds of the land which he had thus fraudulently acquired and disposed of after deducting the amount invested by him therein.

If defendant was plaintiff's agent in the negotiations with Caldwell, and, by fraudulently concealing from plaintiff knowledge of the real cash price for which Caldwell was willing to sell his North Dakota land, was enabled to secure an advantage for himself, he ought to account to plaintiff for whatever he secured as the result of his bad faith, and it matters not that plaintiff was satisfied with his purchase of the North Dakota land and has retained it. What defendant in fact secured was the farm which plaintiff thought he was transferring to Caldwell but was in fact transferring to defendant under the arrangement between defendant and Caldwell at a price much less than that for which plaintiff understood that he was disposing of the farm to Caldwell, and plaintiff might properly elect to avail himself of the benefits of this transaction, which was fraudulent on the part of his agent.

An agent is always held under obligation to account to his principal for the property or profits thereof which he has acquired by fraud upon such principal. *Borst v. Lynch,* 133 Iowa, 567; *Rorebeck v. Van Eaton,* 90 Iowa, 82; *Merrill v. Sax,* 141 Iowa, 386; *Snell v. Goodlander,* 90 Minn. 533 (97 N. W. 421). It is immaterial that the principal has suffered no loss in the transaction through the fraud of his agent. It is enough that the agent has derived a profit or advantage by his failure to disclose to the principal facts

1. AGENCY: fraud
   of agent:
   accounting.

which it was his duty to disclose in order to enable his principal to deal with the other party to the transaction to the best advantage. *Holmes v. Cathcart,* 88 Minn. 213 (92 N. W. 956, 60 L. R. A. 734, 97 Am. St. Rep. 513); *Green v. Peeso,* 92 Iowa, 261.

The real question of difficulty is as to whether defendant was the agent of plaintiff at the time defendant became aware that Caldwell was willing to sell his North Dakota land at the net price of $14 per acre and entered into an arrangement with him to acquire title to the Iowa land at a valuation which would enable Caldwell to realize that amount.

2. SAME: proof of agency: evidence.

The testimony of the witnesses is to some extent contradictory, but we reach the conclusion that the following essential facts were established by a preponderance of the evidence: In May, 1905, plaintiff learned that his brother, W. H. Leonard, and the defendant were about to go to North Dakota to investigate land and arranged to accompany them. He had not previously had any negotiations with defendant in regard to the sale or exchange of his (plaintiff's) farm in Iowa; but defendant, who was a banker and dealer in real estate in the locality where plaintiff and his brother resided, was in fact the agent for W. H. Leonard, going with him for the purpose of assisting him in making exchange of Iowa land for land in North Dakota. During the trip defendant asked plaintiff whether he would turn his land in at $70 per acre if he found anything up there that looked satisfactory and suited him, and plaintiff replied that he would take $70 per acre in cash for his land, and might be willing to exchange for North Dakota land on that basis. Defendant said, if plaintiff found anything satisfactory, he (defendant) would do anything he could for him, and if the deal was made they would settle up after they got home. At Monango, in North Dakota, these parties met Caldwell, with whom none of them had had any previous negotia-

tions, and, with a view to effecting an exchange of W. H. Leonard's land for land offered by Caldwell, they looked at several tracts. While they were thus together, it was disclosed to Caldwell that the plaintiff had a farm which he might exchange for land of Caldwell, and the tract for which plaintiff subsequently made an exchange, as well as other tracts, were investigated; plaintiff referring Caldwell to Omstead with reference to the character of plaintiff's land in Iowa. An exchange on the basis of a cash valuation of plaintiff's land at $70 per acre and Caldwell's land at $25 per acre was discussed, but not at that time · agreed to by either party. Before leaving Monango defendant told plaintiff he thought he had a good deal there if he wanted to carry it through, but said, "We don't want to be in too big a hurry." Plaintiff had endeavored to secure a reduction of $600 in the price of Caldwell's land, and defendant, aware of that fact, said to plaintiff: "When I get home I will write to Caldwell, and I think we can get this $600 off."

After returning to Iowa defendant reported to plaintiff that he had been unable to secure any modification from Caldwell of his proposition, and represented to plaintiff that if he wanted the land he should take it at once to secure the bargain, and plaintiff then concluded to make the trade with Caldwell. In the meantime, and while defendant was at Monango, Caldwell had communicated to defendant the fact that he was willing to dispose of the tract of North Dakota land which he was offering to plaintiff for $25 per acre at $14 per acre net cash, and asked defendant whether he could get a purchaser for plaintiff's land if he (Caldwell) should make the trade. Defendant gave Caldwell no definite assurance as to what could be done as to selling plaintiff's land, and Caldwell then proposed to transfer it to defendant in the event that a trade was made at such price as would net him $14 per acre for his North Dakota land. Defendant acceded

to this proposition, and, when plaintiff expressed his willingness to make the trade caused deeds to be executed by plaintiff to Caldwell and by Caldwell to himself for the avowed purpose of concealing from plaintiff the fact that the Iowa land was passing to defendant as a result of the transaction. In connection with the closing of the trade between plaintiff and Caldwell and the, passing of the deeds through defendant's hands, defendant represented to plaintiff that the abstract of title to the North Dakota land had been examined by an attorney and pronounced satisfactory, and at the conclusion of the exchange of deeds he suggested to plaintiff the subject of commission, and said that the customary commission of $1 per acre would be $160, but, on plaintiff's objecting to the amount, expressed his willingness to accept $100, whereupon plaintiff gave him his check for that amount. This final transfer and delivery of the check for the commission took place in defendant's bank, and after plaintiff had left defendant handed the check to the assistant cashier of the bank, with the remark that he "got that much commission out of it anyway."

It is insisted for defendant that the facts do not establish an agency, which can arise only by contract; and further that, even if there was an agency while the parties were at Monango, there was none when the plaintiff finally accepted Caldwell's offer and completed the transaction by the passing of deeds through defendant's hands, for, as it is claimed, defendant was at that time acting for Caldwell. But we are well satisfied that defendant recognized an agency on his part for plaintiff at Monango which entitled him to a commission if an exchange of properties between plaintiff and Caldwell should be made, and, if he was plaintiff's agent at that time, it was his duty to disclose to plaintiff the fact that Caldwell was willing to dispose of his land for a net cash price of $14 per acre while attempting to secure $25 per acre in the exchange. Cald-

well may have been acting in good faith with plaintiff in putting a mere trade value on his land, assuming that plaintiff was doing the same as to the Iowa land, and may therefore have been willing to dispose of the Iowa land at a price which would net him $14 per acre for the North Dakota land, and unwilling to make the trade unless he could make an arrangement with defendant assuring him that result; but these facts should have been disclosed by defendant to the plaintiff. Not having disclosed them, he was guilty of bad faith and bound to account to plaintiff for any profit subsequently realized by him as the result of such bad faith, and it mattered not that in the final negotiations he acted only for Caldwell. We are inclined to think, however, that plaintiff understood defendant to be acting for him until the negotiation was finally concluded by the transfer of title. While agency is a relation arising out of contract, yet the contract which gives rise to it may be inferred from the circumstances. It need not be proven by evidence of an express agreement. *Storm Lake Bank v. Missouri Valley L. Ins. Co.,* 66 Iowa, 617; *First Nat. Bank v. Free,* 67 Iowa, 11.

It is contended for appellant that the price fixed by plaintiff on his Iowa land was merely a trading price, and that it was not actually worth more than $55 or $60 per acre, and the testimony of several witnesses is referred to as supporting this contention; but the actual value of plaintiff's land is not the basis on which to determine the extent of defendant's liability. He did in fact acquire title to property as the result of a breach of trust toward plaintiff while acting as his agent, and he is bound to account for the value of the property thus acquired. He disposed of the land to the Beshys at $75 per acre, taking in part pay a stock of goods which he says he disposed of at the value for which he accepted it in the exchange. Under these circumstances he can not contend that he is not

bound to account on the basis of the selling price to the Beshys.

Finding that the decree of the trial court is right in principle and supported by a preponderance of the evidence, it is *affirmed*.