FRED BROWN & CO. v. JAMES M. CASH, THOMAS CASH, CARRIE R. HEMPSTEAD, FRED H. HASKELL, Appellants.

**Parties:** INTERVENTION. Any person who has an interest in the subject matter of litigation may become a party to the suit by joining with either party as against the other, or he may claim adversely to both; thus where agents brought suit to recover a share of the profits of land bought by defendants from plaintiff's principal for the benefit of both plaintiff and defendant, the principal, not knowing of the agent's interest, could intervene and claim the agent's interest.

**Principal and agent:** FRAUD: ACCOUNTING. One employed simply to rent and care for land may acquire an interest therein by purchase from the principal, without disclosing his relation to the transaction; but if employed to sell he is bound to disclose his intention of acquiring an interest in the transaction, and failing to do so may be held to account to his principal for the proceeds realized, even though his principal may have suffered no loss. Evidence held to show an agency to sell, that the agents concealed their interest in the purchase, and that defendants knew of such concealment.

**Same:** FRAUD IN THE PURCHASE OF LAND: ACCOUNTING. Where a purchaser of land for his own benefit and that of the agents of the owner knew that the agents were concealing their interest in the purchase from the owner, he can be required to account to the owner for the profits realized by him out of the transaction.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

TUESDAY, JANUARY 27, 1914.

ACTION by plaintiffs for an agreed share in the profits of a real estate transaction. The executors of the estate who con-

veyed the land intervened, claiming said profits. Judgment was entered dismissing the petition of intervention, and in favor of plaintiffs for one-third of the profits realized in the transaction. The defendant and interveners appeal.—*Reversed.*

*Ney & Bradley,* for appellants.

*Sharon & Higgins,* for appellees.

LADD, C. J.—Mary E. McIntire, in her lifetime, owned three hundred and twenty acres of land in Harrison county, and upon her demise title passed to the executors of her estate, Fred H. Haskell and Carrie R. Hempstead. The latter resided at Mendota, Ill., and the former had moved from that place to California. N. J. Demerath, their attorney, lived at Kewanee, Ill., and during the time in question attended to the business of the estate, being interested as one-fourth owner under the will if his deceased wife.

Fred Brown & Co., a copartnership, composed of Fred Brown and M. J. Fitzgibbons, were engaged in the real estate business at Missouri Valley, and had attended to the renting and care of the land for many years. James M. Cash was engaged in the real estate business at Iowa City, and seems to have had certain property in Davenport belonging to Dr. Atkinson, listed with him for exchange. His brother, Thomas Cash, resided at Missouri Valley. In the latter part of November or fore part of December, 1912, an exchange of the farm at the estimated value of $125 per acre for the property in Davenport at the estimated value of $27,000 was effected; Atkinson taking the land subject to a $9,500 mortgage, and paying $3,000 difference. Later James M. Cash sold the Davenport property for $14,000, and, as the farm was purchased for $17,000, this left a net profit, after deducting all incidental expenses, of $9,363.10. The plaintiffs claim that

prior to these transactions it was agreed between them, Thomas Cash and James M. Cash, that they would purchase the farm together, make the exchange, and share the profits, by allowing Thomas Cash, who took the title, one-sixth thereof, James M. Cash one-half, and plaintiffs one-third. The defendant contends that he bought the farm through plaintiffs as agents for $60 per acre, and the only issue between these parties is whether plaintiffs are entitled to one-third of the profits, or $3,131.03, or the balance of the purchase price at $60 per acre, or $2,200. It is enough to say, without reviewing the evidence in detail, that we concur in the finding of the trial court that the land was purchased by the parties in pursuance of an agreement such as recited, and not by James M. Cash individually. The correspondence of Cash is inconsistent with any other theory, and his credibility as a witness is much impaired by his misrepresentation of the price received for the Davenport property. His liability, then, is for profits, rather than for balance of purchase price.

II. The next inquiry is: Which is entitled thereto, Fred Brown & Co., or the executors of the estate of Mary E. McIntire? The plaintiffs contend that the latter ought not to have been permitted to intervene. They are claiming the very indebtedness sought to be recovered by plaintiffs in pursuance of a statute authorizing "any person who has an interest in the matter in litigation . . . against both plaintiff and defendant may become a party to an action between other persons . . . by demanding anything adversely to both plaintiff and defendant either before or after issue has been joined and before the trial commences" (section 3594, Code), and in filing the petition are squarely within its terms.

1. PARTIES: intervention.

Counsel for plaintiffs first argues that Fred Brown & Co. was not the agent of interveners to find a purchaser for the

land , but merely to lease. If merely agent to rent and care
for the land, they were at liberty to negotiate
a purchase for themselves, even though inter-
veners may not have known they were the real
purchasers. *Douglass v. Lougee,* 147 Iowa, 406. But, if
they were agents for the sale of the land, they might not prop-
erly be interested in the purchase, without disclosing the fact
to their principal, and, if they participated in the purchase,
they must account for the proceeds realized therefrom. As
said in *Leonard v. Omstead,* 141 Iowa, 485: "An agent is al-
ways held under obligation to account to his principal for the
property or profits thereof which he has acquired by fraud
upon his principal. *Borst v. Lynch,* 133 Iowa, 567; *Rorebeck
v. Van Eaton,* 90 Iowa, 82; *Merrill v. Sax,* 141 Iowa, 386;
*Snell v. Goodlander,* 90 Minn. 533 (97 N. W. 421). It is im-
material that the principal has suffered no loss in the transac-
tion through the fraud of his agent. It is enough that the
agent has derived a profit or advantage by his failure to dis-
close to the principal facts which it was his duty to disclose
in order to enable his principal to deal with the other party
to the transaction to the best advantage. *Holmes v. Cathcart
et al.,* 88 Minn. 213 (92 N. W. 956, 60 L. R. A. 734, 97 Am.
St. Rep. 513); *Green v. Peeso,* 92 Iowa, 261." See, also, *Mer-
rill v. Sax,* 141 Iowa, 386.

The evidence leaves no doubt but that plaintiffs had been
interveners' agent to rent and care for the land for many
years. It is equally conclusive that they became agents for
the sale of the land during 1912. Demerath testified that he
talked to them about the sale of the land, and in June, 1910,
wrote Fred Brown & Co.: "We are offering the land for
sale, and the others feel that it should be disposed of some
time during the present summer. Will you kindly give this
matter your attention, and see what is the best price you can
secure for the same?" To this, Brown & Co. responded, on
June 23d: "If you have a price on the farm, you may inform
us what it is, and we will do our best to make a sale for you;

2. PRINCIPAL AND
AGENT: fraud:
accounting.

also, if you would prefer to have it all cash, or how much you would be willing to carry back on the farm." On July 5th Brown wrote: "I think, if you would make the price right on the one-half section, and carry back a good fair loan, we might be able to dispose of it for you. Kindly write me your lowest price and the very best terms you can sell it on, and I will get busy and see what I can do with the land." Again, on July 18th, Brown wrote: "I wish you would send me the lowest price on the land and the very best terms you can expect, and I will try and handle it for you, as I think this would be a good year on account of the dry weather to dispose of this farm." On July 25th Brown sent another letter: "I note what you say in regard to seeing the executrix of Mary McIntire's estate, and will expect a price on the land in the near future." Demerath answered, July 29th: "I have just had an interview with the executrix and some of the others of the McIntire estate concerning the land, and they are willing to sell the same for $55 per acre; would like as much of the purchase price in cash as possible. They would be willing to carry a fair mortgage on the place. Kindly give me your idea of the chance of sale at this price." On September 12th Fred Brown & Co. addressed a letter to Demerath, saying: "As to selling the farm, we have had no chance to turn it yet; we have showed it several times. We had a party looking at it last week; after we got back to town, he went out and looked it over again, and I talked with the tenant, and the tenant gave it a 'black eye,' or I believe we would have sold it to him. However, we will do our very best, and, if we get an offer, will submit it to you."

This correspondence is the best answer to plaintiff's contention that the firm was not acting as agent for the sale of the land. Moreover, the correspondence which follows shows very clearly that plaintiffs understood they were so acting, and misrepresenting the facts, and concealing the truth from Demerath, even if it were conceded that Fitzgibbons spoke to Demerath at one time of buying the land himself, for on Oc-

tober 1st Fred Brown addressed Demerath: ''I have a proposition on the one-half section that I think I could close out, if you would accept same, and make the terms as the parties want them: Sixteen thousand: One thousand cash; three thousand Mar. 1, 1911; balance five years' optional payments. The parties are buying the land, expecting to spend five thousand at once in improvements, so that this will make the security perfectly good; and I believe the interest on the money would pay you better than the farm is doing under the present tenants. I am not quite sure I can close with the parties at your price, but think I can, and I wish you would write me at once and let me know whether you will accept a proposition of this kind or not.'' The defendant and Thomas Cash, with Brown, had looked at this and other lands with a view of exchanging for the property in Davenport belonging to Atkinson, and, according to the evidence, had arranged that the interveners' land be purchased and exchanged for Atkinson's property, and said property then disposed of, and the profits derived from the transaction be shared as stated. Thomas Cash was to take title, but without intention of improving as stated in the letter, and he and Brown conducted negotiations in pursuance of which these letters were written. Demerath, knowing nothing of this, on October 8th, declined the proposition, saying that a more substantial payment should be made, and that not less than $55 per acre could be taken for the land. On October 13th Brown wrote again:

In reply to your letters of recent date, will say that I have the proposition changed this much for you, and would advise you to take it. I have an offer of immediate settlement on your half section; $6,000 cash, $10,000 five years, optional, at 6 per cent., money and mortgage to be turned over to you at once. The party agrees to pay me $1 an acre commission, so this would make net $16,000 to the heirs of the McIntire estate. Now, Mr. Demerath, I think that the experience I have had in handling this farm that the interest on $10,000 at 6 per cent. would pay a great deal bigger dividend than the entire farm is paying you at the present time,

and you will have no worry with it. I also think it will be impossible for you to ever handle this farm without spending five or six thousand dollars on it to put it in rental condition. It is run down, and the improvements are so small for a half section, and no fences, that it is just impossible for us to get a good tenant to take hold of it. Now, if your people make up their minds to take this proposition, you can draw the papers, and send them to the First National Bank at Missouri Valley, Iowa, with instructions to turn them over when $6,000 is turned over to the bank, and the mortgage is properly signed. The name of the gentleman getting the farm is Thomas Cash. He is an ex-railroad contractor, and has plenty of horses and machinery to ditch and plow this land, and I will say this, that each year Mr. Cash holds this land he will make your mortgage better, as he will improve and fence it, and clean it up in good shape, provided the seasons are not too wet for him.

As Brown and Thomas Cash well knew, the purchasers had no notion of cultivating the same.

Demerath responded, saying that it was not likely the executrix would accept the offer: ''I think, however, if your client will make the amount $17,000 net, with $7,000 in cash, and the $10,000, on the same terms as the original offer, that I can persuade her to take it. If you will take the matter up right away, and will let me hear from you, I will do what I can to close the deal.'' Brown telegraphed Demerath on the 16th of October: ''Seventeen thousand net; seven thousand cash; ten thousand five years, optional six per cent. papers.'' Demerath responded by saying he would take the matter up at once, requesting a blank mortgage, and inquired as to the name of Mrs. Cash, and said the deed would have to be sent to California for Haskell's signature. In response to this, Brown wrote on October 19th: ''You are safe in going ahead and closing the deal, as I have given Mr. Cash a contract, and taken some money from him as down payment on the one-half section. I met Mr. Cash this morning before getting your letter, and I told him that I thought everything would be all right, and that we could have the papers around in ten days

or two weeks. He was very anxious to know on account of trying to do some work on the farm this fall, so that I told him to go ahead and plow, if he wanted to.'' And yet no contract had been made, or money paid, nor did Cash have the slightest intention of operating the farm. But, as said, he knew these letters were being written, and must have been aware that plaintiffs were deceiving Demerath as to who the purchaser was, and acting in violation of their obligations to their principals.

Negotiations had been proceeding between Dr. Atkinson and James M. Cash, and finally they entered into a contract whereby Cash undertook to convey the land on terms hereinbefore stated in exchange for the latter's Davenport property. Demerath forwarded a deed of the land to a bank in Missouri Valley running to Thomas Cash, and the exchange was effected by negotiating a loan on the property received from Atkinson, not only without advancing any money, but with a balance of about $2,500 remaining on hand. Further details of the transaction are unnecessary. The defendant received the entire profits, and refused to divide. The evidence that plaintiffs concealed from Demerath that they were participating in the purchase from the executors was undisputed, and so, too, is it undisputed that Thomas Cash, who, according to defendant's testimony, represented him, was aware of the correspondence, and of the tactics practiced on the representatives of the executors in acquiring title in Cash's name.

III. As said, Thomas Cash actively participated with plaintiffs in the negotiations with Demerath for the land. He knew that Brown, in behalf of plaintiffs, was representing him as the purchaser to Demerath, and with-

3. SAME: fraud in the purchase of land: accounting.

holding information that Fred Brown & Co. was interested therein with him and his brother. He took title to the land, charged with notice of the fraud perpetrated by the agent, and subject to the right of the owners, the interveners herein, to assert their right thereto, or to the proceeds derived therefrom. He was acting in behalf

of himself and brother, and took title in pursuance of the arrangement made, and we know of no reason why the defendant should not respond by turning over to the interveners the amount derived from the disposal of this farm. The Davenport property was acquired in consideration of the conveyance of the farm by Thomas Cash, and, as the latter was representing defendant as well as himself in negotiating with Demerath for the purchase of the farm, both were chargeable with notice of the fraud being perpetrated by the agents, and necessarily dealt with property derived therefrom, subject to the owner's right to trace the proceeds of their land into their hands. The defendant still has these, and ought to account therefor.

But the interveners assert no claim against defendant other than the amount which defendant had agreed to pay the plaintiffs, and against plaintiffs for the difference between the value of the land and the price for which sold. As the price equaled its value, no recovery may be had against plaintiffs, and defendant was to turn over to plaintiffs one-third of the profits only. Judgment should have been entered against defendant on the petition of intervention for $3,131.03, with interest from April 3, 1911. Upon remand, the interveners may, if they so elect, amend the petition of intervention in conformity with the facts, and, unless it shall be made to appear otherwise, enter judgment for the full amount of the profits in defendant's hands, with interest.

IV. It is argued by appellees that interveners are acting solely for the benefit of the defendant. The evidence does not warrant this conclusion. It is true that counsel for defendant, after his employment, interviewed Demerath, and arranged to file the petition of intervention; but the evidence fails to disclose that such intervention was not in good faith, and for the purpose of recovering a claim justly owing the interveners, though counsel may not have rightly measured the extent of defendant's liability. The theory of the defense was that in any event defendant had at least $2,200 he had obligated him-

self to pay plaintiffs, so that his position and that of plaintiffs are no't entirely inconsistent. If, as it is contended, he purchased the land, he still owed $2,200 on the purchase price, and this, on the facts as disclosed, belonged to the interveners; if, on the other hand, the agreement was that the profits should be shared, then $3,131.03 at least was owing plaintiffs as their share, and was a part of the money realized. We are of opinion that the district court erred in dismissing the intervener's petition, and in rendering judgment in favor of plaintiffs. The petition should have been dismissed, and judgment entered in favor of interveners.—*Reversed.*

EVANS, WEAVER and PRESTON, JJ., concurring.