90   689
107  668

90   689
113  103

WM. M. SCOTT, Appellee, v. DARBY COAL COMPANY, Appellant.

Master and Servant: DEFECTIVE APPLIANCES: NEGLIGENCE OF FEL-
LOW SERVANT: WAIVER. In an action by an employee against his
employer to recover damages for a personal injury alleged to have
been sustained through the defective character of the machinery used
and its negligent operation by a coemployee, the court instructed
the jury that if they found that the plaintiff knew of the alleged
defect in the machinery and of the incompetency of the fellow ser-
vant causing the injury, and remained in such employment without
protest, and without inducement, or promise that the defect in the
machinery should be remedied, he would be held to have waived all
objection to the defective machinery and to the incompetency of his
fellow servant. *Held*, that said instructions were the law of the case,
and, it appearing from the evidence that the plaintiff had such knowl-
edge, and that he made no complaint, a judgment in his favor should
be reversed.

*Appeal from Appanoose District Court.*—HON. W. I.
BABB, Judge.

FRIDAY, JANUARY 26, 1894.

ACTION for personal injuries in a coal shaft. There
was a judgment for the plaintiff, and the defendant.
appealed.—*Reversed.*

*T. M. Fee* and *McElroy & Roberts* for appellant.

*Geo. D. Porter* for appellee.

GRANGER, C. J.—In September, 1891, the plaintiff
was in the employ of the defendant company, as a car-
penter, and was engaged in shingling the sides of a
shaft. For this purpose he was on the top of a cage
that was operated up and down by an engine in charge
of an engineer. When the plaintiff desired the cage

moved, he would give the engineer directions whether up or down, and the distance. On the day of the injury for which this action is brought, the plaintiff directed the engineer to lower the cage about three feet. In the attempt to lower the cage, it was first moved upward some eighteen inches or two feet, and then downward. By the upward movement, plaintiff's knee was caught in the mid wall, the leg broken, and so injured that amputation is likely to follow. The injury is charged as the result of negligence on the part of the company, and the plaintiff obtained a verdict and judgment. The appellant asks a reversal of the case on the ground that the evidence shows that the company was not negligent. The averments of negligence are, *first*, that the engineer raised, instead of lowering, the cage, as directed; *second*, that the company was negligent in employing an incompetent engineer; *third*, that the engine was not of the kind required for such work.

The court below eliminated, in the submission of the cause, the charge as to negligence in raising, instead of lowering, the cage, as directed, and submitted the questions only of negligence in the employment of an incompetent engineer, and in using an engine not suitable for the work. The record shows that two kinds of engines are used for hoisting purposes in coal shafts, single and double, and that the latter is the better engine. The single engine was the one in use by the defendant. In using the single engine, there are two points in each of the revolutions, known as "dead points" or "dead centers," at each of which the steam power is lost, and these two points are when the piston rod is furthest out or furthest in. The office of the fly wheel is, by the motion it has acquired after the engine is in operation, to carry the rod past this center to where the motive power again becomes effective. If the engine is stopped with the rod exactly at or over

this dead center, it can not be set in motion by the steam power, and some other power, as the hand, must be applied to turn it past. If the engine is stopped when the rod is not at the center, but so near it that the fly wheel does not, before the rod reaches the center, acquire sufficient velocity to carry it past, then a way to start it by steam, in the desired direction, is to first reverse or turn it back to a point so that, in going forward, the fly wheel will acquire enough force to carry the rod past the center; and, when once in motion, no further difficulty is experienced. At the time the plaintiff gave the direction to lower the cage three feet, the position of the engine was that last described; and the engineer, observing the method above indicated, reversed the engine, to get the necessary motion to go the other way. The effect of this reversing the engine was to carry the cage upward a short distance, by which the plaintiff was caught against the side of the shaft, and injured. With the double engine, this difficulty in starting is not experienced, and no upward movement of the cage would have been necessary, before dropping it to the desired point. The appellee places great reliance on the fact of this difference between the two engines, and that the double engine was the better one, as showing negligence. We may say that we do not concur in the view of the appellee that the defendant was negligent in the use of the single engine, merely because a better one was obtainable; but it is unnecessary to discuss the question, as the cause must be reversed on other considerations.

The court gave the jury the following instructions: "9. If the defects in the machinery, which result in an injury to an employee, are known to him, or are discoverable by him, in the exercise of ordinary care, and he remains in such employment without protest and without inducement, or promise that the defect shall be remedied, he will be presumed to have waived his objection to

such defects, and in such case he can not recover for any injury resulting from same. In this case, if you find that the engine in question was defective, and was not a proper engine to be used in hoisting and lowering the cage at defendant's coal mine shaft, and further find that the plaintiff knew such fact, or that its defects were so observable that, in the exercise of ordinary care, he should have known them, prior to the alleged injury, then he could not recover upon the ground of negligence of defendant in using such engine, if he remained in the employ of defendant, without objection or protest, after such knowledge, or after the time when, in the exercise of ordinary care, he should have known it.

10. The same rule will apply to the employment by defendant of an incompetent engineer. If you find that the defendant was guilty of negligence in the employment of an incompetent engineer, and further find that the plaintiff knew, or that it was so apparent that in the exercise of ordinary care he should have known, of his incompetency, before the time of the injury, and made no objection to him, and remained in the employment of defendant after such time, then he will be deemed to have waived it, and he can not recover in that event, on account of the incompetency of the engineer.''

These instructions are the law of this case, and a rule is given whereby, under a given state of facts as to each charge of negligence, there can be no recovery; and the undisputed facts bring the plaintiff within the rule so clearly that we think, in view of the rule given, the court could have, in terms, instructed against a recovery. No person was more familiar with the facts and situation of which complaint is made than was the plaintiff. He was as familiar as any person could well be with what he called the defect in the engine, that is, the reason, now urged, why it was not suitable for the

work, and he was particularly familiar with the methods of the engineer in operating it. He says: "Haley became engineer between the fifth and fifteenth of August, just after the engine was set up. I got acquainted with him the last of June, when I went there to get a job. We worked together, setting up the engine and other work, right straight along. He was the engineer and I was the carpenter, both in the employ of the defending coal company. He operated the engine right up to the time of the injury, and I was right around him there while he was operating it. Part of the time, I was away from him. I saw him operating it a great many times every day, or almost every day. Some days, I did not see him from morning until noon. I never made any complaint to Mr. Williams, or anybody else, about Haley managing the engine." Again he says: "*Question.* He seemed to operate the engine just as good as anybody, didn't he? *Answer.* Just about the same. *Question.* You couldn't see but that he could operate that engine just as good as anybody could operate a single engine. *Answer.* No, I could see that he could not. *Question.* You could see that he could not? *Answer.* Yes, sir. *Question.* In what way? What seemed the trouble? *Answer.* Why, I have seen a single engine operated that was operated a great deal better than that one was. *Question.* What seemed to be the trouble in his manner of operating that engine? *Answer.* It was getting it on the center. *Question.* Your idea is that you have seen engineers who could keep it off center better than he could? *Answer.* Yes, sir. *Question.* You noticed this during that month before the accident, did you? *Answer.* Yes, sir. *Question.* Frequently, every day? *Answer.* Oh, no; I could not say I did every day. *Question.* Your idea is, you say, that during that time you saw that he was not able to operate that engine, and keep it off center, as good as some other engineers you have

seen operating a single engine? *Answer.* Well, I have seen others operating a single engine that operate it better than that one was. *Question.* That was all before the accident, was it? *Answer.* Yes, sir. *Question.* All these engines you are talking about seeing operated was before this accident? *Answer.* Yes, sir. *Question.* Now, the only thing you say of this engineer is that you knew of other engineers doing better than he was in keeping the engine off center. You think you have seen other engineers that kept it off center better than he could. *Answer.* I do not know whether it was in the engine or in the engineer. I had seen other single engines that were kept off center better than that one. *Question.* You don't know whether it was the fault of the engineer or the engine itself? *Answer.* No, sir. *Question.* Was that the only fault you had to find with the engineer or with the engine, this trouble about keeping it off center? *Answer.* That is the only trouble that I knew of. *Question.* The only trouble that you had found, or objection that you found, to this single engine, was the trouble of keeping it off center? *Answer.* I say I don't know whether it was in the engineer or in the engine. I have seen them that was kept off better. *Question.* Do you know any other objection to the engineer, except that one? *Answer.* That is the main objection. *Question.* But, if you found any objection at all to the engineer himself, it would be on that ground, would it? *Answer.* Yes, sir. *Question.* That is right? *Answer.* Yes, sir. *Question.* That was all known to you some time before the accident, was it? *Answer.* Yes, sir." From this testimony it conclusively appears that but a single complaint was made as to the engine, that it would get "on center," and only one complaint as to the engineer, and that is that he didn't keep it "off center" as well as some other engineers. With both of these facts he was entirely familiar before the injury, and made no complaint. Nothing in the record

presents a conflict as to these facts, nor is there a pretense that reasons exist that would excuse his remaining in the defendant's employ after knowledge of such facts. The conclusion is so obvious that we do not know how to enlarge upon it, nor is it necessary. The defendant, under the instructions and the facts, was entitled to the verdict.

To avoid the waiver as to which the court instructed, the appellee urges that it was not pleaded, and he says, "This fact ends the case." Without intimating that the pleadings are defective in this respect, it is only necessary for us to say that the instructions, without objections by either party, present the rule as applicable to the issues, and the jury could not properly disregard it. As we have said, the instructions are the law of the case. These considerations are conclusive on this appeal, and the judgment is REVERSED.