GEORGE C. BOILEAU, Appellant, v. RECORDS & BREEN ET AL., Appellees.

**Real property:** TITLE: BONA FIDE PURCHASER. The purchaser of land by quit claim deed at one-fourth its value takes the title with knowledge that it is charged with some risk.

**Same:** GUARANTY AS TO TITLE. A guaranty that the title to land resting upon a tax sale was regular and legal goes simply to the proceedings leading up to the tax deed; it does not include the mental competency of the person who owned the land at the time of its assessment and sale.

**Same:** FRAUD IN THE SALE OF LAND: CONCEALMENT OF FACTS. Concealment of a material fact which a vendor of land is bound to disclose will amount to misrepresentation, if the inducing cause of the sale; but mere silence on the part of the vendor concerning a matter of which the purchaser has equal and available means of information is not ground for an action for deceit. Thus where defendant conveyed property by quit claim deed for much less than its value, guaranteeing that the tax title upon which the conveyance rested was regular and legal, with no affirmative statement intended to deceive, and the purchaser knew of proceedings against the prior owner for

recovery of possession of the property, a failure to inform plaintiff of the mental incompetency of the prior owner was not sufficient basis for an action for fraud and deceit.

**Same.** The question of fraud in the sale of land does not depend upon the nature of the instrument, which is the basis of title; and to constitute a cause of action for fraud against the grantor in a quit claim deed the fraud must appear.

**Fraud in the sale of land:** EVIDENCE. Where plaintiff purchased land held by the grantor under a tax title, evidence as to what plaintiff might have done had he been informed of the original owner's unsoundness of mind when the land was sold for taxes was immaterial.

**Same.** Where defendants acquired a tax title to land and instituted proceedings to recover possession from the original owner, in which it appeared that he was insane at the time the proceedings were had culminating in the tax deed, and the court refused to enter a decree because of his insanity, statements of the trial judge regarding such refusal were inadmissible in an action against defendant for fraud in failing to disclose the original owner's insanity.

*Appeal from Mills District Court.*—HON. THOMAS ARTHUR, Judge.

SATURDAY, DECEMBER 13, 1913.

ACTION for damages based upon fraud in the sale of real estate. From a directed verdict against plaintiff, he appeals.—*Affirmed.*

*Gillilland & Logan,* for appellant.

*C. E. Dean* and *W. S. Lewis,* for appellees.

WITHROW, J.—I. Plaintiff who is the appellant, brought action at law to recover damages for alleged fraudulent representations and concealment of the appellees in the trade of real estate. At the conclusion of plaintiff's evidence the trial court directed a verdict for the defendants, and, from the judgment entered against him for costs, the plaintiff appeals.

The facts, so far as they have bearing upon the errors urged, will appear in the opinion.

II. The principal charge of error is that the evidence in support of plaintiff's claim was such as to require the submission of the cause to the jury. It appears that the appellees were, prior to October 15, 1907, the owners of a tax deed, which conveyed to them by tax title forty-eight acres of land in Mills county, Iowa. The title of the land at the time of the assessment of taxes for which it was sold and at the time of the issuance of the tax deed was in one R. H. Kesterson. The transaction between the parties to this action was in pursuance of a contract entered into between them October 15, 1907, under which, in consideration of the quitclaim deed for the forty-eight acres, the appellant was to convey to the appellees a town lot in Red Oak, which the evidence shows was of the value of $1,000, and also pay $100 at the time of executing the contract, and $150 at the time of the delivery of the quitclaim deeds. In the contract appears the provision that the "party of the first part guarantee that the tax deed upon which the title to the above land is based is regular and in accordance with the laws and requirements of Iowa." The contract was concluded according to its terms about November 12, 1907; the deed to the appellant being received by him with grantee's name omitted, that space being left blank for the insertion of such name as he might afterward desire. The value of the land described in the quitclaim deed is shown to have been about $4,800. The appellant was at the time a dealer in real estate. In connection with others he made several efforts to dispose of the real estate, having the deed in question under his control, or in the hands of parties whom he had interested for the purpose of trade. He commenced this action on November 10, 1911, which was four years after the date of the delivery of the deed to him.

The particular fraud upon which appellant relies is that at the time of the contract and the subsequent execution

of the deed Kesterson was of unsound mind, and that he thereby came within the exceptions of the statute as to title passing by tax sale, and that such fact was known to the appellees and not the appellant, and that they concealed it from him.  There is no claim that there was any affirmative representations as to Kesterson's mental condition made by the appellees.  It appears that at some time after procuring the tax deed, and before the conveyance to appellant, suit was instituted in the district court of Mills county by Records & Breen against Kesterson for recovery of the possession of the forty-eight acres.  The pendency of this action, but not its conclusion, was shown by the abstract of title furnished to the appellant.  Defense was made, there was a trial to the court, the cause was submitted to be decided in vacation, and afterwards the trial judge, O. D. Wheeler, filed with the clerk an order stating that the plaintiff dismissed the case without prejudice.  The defense relied upon was the want of mental capacity of Kesterson at the time of the tax sale and issuance of the deed thereunder.  The appellant testifies that nothing was said about the mental condition of Kesterson, but that Records & Breen said they had brought suit for possession, "but nothing was said of its having been tried out to get a decision on it; nothing was said about Judge Wheeler having passed on it, and announced what his decision would be." Kesterson remained in possession of the real estate with the knowledge of appellant without open challenge of his rights to so do up to some time in 1910, when Boileau commenced proceedings to recover possession of the real estate, basing his right upon the tax deed.  After suit was brought, application was made to the district court of Mills county for the appointment of a guardian for Kesterson on the ground of his mental incompetency, and the proceedings resulted in such appointment being made, and the guardian thus appointed made defense to the action brought by Boileau, praying the right to redeem from tax sale, which upon hearing was granted.  Evidence was offered in the present trial tending to

show that Judge Wheeler, after the hearing in the first action brought against Kesterson, in private conversation informed Mr. Dean, who was attorney for Records, that he could not grant a decree, because he was satisfied Kesterson was not of sound mind. Upon objection this evidence was not admitted. It is the claim of the appellant that the reasons given by Judge Wheeler were communicated to Records by his attorney, and that upon hearing such fact he sought to dispose of his title. It is unnecessary to more in detail set out the evidence. That which we have given sufficiently presents the record for a determination of the controlling questions. This suit is to recover the amount paid by appellant for the tax title land.

III. The appellant was the purchaser under a quitclaim deed, the consideration given by him being about one-fourth the value of the land described in the conveyance to him.

1. REAL PROPER-
TY: title: bona
fide pur-
chaser.

It is evident that he took whatever title passed to him with knowledge that it was charged with some risk. There is no evidence in the record tending to show any weakness in the title save that resulting from the mental incapacity of Kesterson, and that the title conveyed was of an uncertain nature was known to and appreciated by Boileau. This, however, is not the only view to be taken of the record.

The contract between the parties expressly guaranteed that the tax title was regular, and was in accordance with the laws of the state. This reached only to the regularity of the proceedings leading up to and resulting in the tax deed. There was no other assurance or warranty, and appellant's case must therefore rest upon the proposition that, by concealment of facts as to the mental competency of the holder of the legal title, they perpetrated a fraud upon the appellant.

2. SAME: guaran-
ty as to title.

Under certain circumstances concealment of a material fact which the party is bound in good faith to disclose will

amount to a misrepresentation, if it was an inducing cause in the transaction. When a vendor by quit-claim deed makes false representations upon which the buyer relies, he cannot escape liability for his fraud. *Ballou v. Lucas, Ad'm*, 59 Iowa, 22. But the rule as thus stated does not apply without qualification, when concealment is the basis of the charge of fraud. Mere silence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation, and in the absence of a duty to speak it is not of itself ground for an action of deceit. 20 Cyc. 15. When the relations between the parties are of a confidential nature, under which one has the right to rely upon the good faith of another, and if there be a concealment of a material fact, within the knowledge of the vendor, and which the vendor is bound in good faith to disclose, such may amount to actionable fraud. But when the subject-matter of the representation or concealment is one as to which the purchaser has equal and available means of information, he must make use of them, and in failing to do so he cannot recover on the ground that he was misled. *Boddy v. Henry*, 113 Iowa, 463. These statements of the general rule are but the expressions of many authorities, and are so well settled that extended citations are unnecessary.

3. SAME: fraud in the sale of land: concealment of facts.

In this case there was knowledge on the part of the appellant that proceedings had been instituted against Kesterson. Their nature may not have been fully explained to him; but he had full opportunity to inquire into and learn the condition of the case, and what it involved, as claims against the title under the tax deed. No statement was made by the appellees to him which was deceptive or calculated to mislead him in any inquiry he might make. He knew that Kesterson was in actual possession of the land, and as a prospective purchaser was bound to take notice of the claim under which such possession was held, especially when it was apparently adverse to the right under which he was ex-

pecting to acquire title. Having knowledge, or presumed knowledge, of these facts, and a means of knowledge which was interfered with by no act of the appellees, the record fails to show that which, as a charge of fraud, should have been submitted to the jury.

IV. The second assignment of error, which is based upon the claim that the trial court assumed that the action was based upon the quitclaim deed instead of fraud, is not well

4. SAME.      taken. The governing rules stated above do not depend upon the nature of the instrument which is the basis of title, nor do we understand from the statements of the trial court in passing upon defendant's motion that it was so held; but rather, in the absence of covenants of warranty, which is the character of a quitclaim deed, nothing passed but the naked title, and to have a cause of action against the grantors fraud must appear.

V. The third assignment of error relates to the exclusion of testimony as to what appellant would not have done had he known that Kesterson was of unsound mind. In

5. FRAUD IN THE SALE OF LAND.      the absence of facts showing fraud by the grantors, the evidence was immaterial, and the objection was properly sustained.

VI. Error is charged in the refusal of the trial court to permit the introduction of the testimony of Judge Wheeler as to what he had told Dean, the attorney for Record, as

6. SAME.      the reason why he could not grant a decree ousting Kesterson of his possession. The basis of the ruling of the trial court was that the offered statement was not competent as a judicial finding, the action having been dismissed, and also that, as it bore upon the mental capacity of Kesterson, it was not direct testimony on that point, and was inadmissible. We think the ruling was correct.

Judge Wheeler was not called as a witness to testify to his own observations and conclusions as to Kesterson's mental capacity, which would have been competent, but only as

to what he had said to Dean on that subject, and this was not competent evidence. We find no error.

The judgment of the trial court is—*Affirmed.*

WEAVER, C. J., and GAYNOR and PRESTON, JJ., concur.