C. S. BOGLE, Appellee, v. J. T. GOLDSWORTHY, Appellant, et al., Appellees.

L. W. KARLEN, Appellee, v. C. S. BOGLE et al., Appellees; J. T. GOLDSWORTHY, Appellant.

**TRUSTS:** Constructive Trusts—Fraudulent Purchase of Property. An
1  owner of real estate who has been fraudulently induced to convey the same because of the secret intent of the supposedly solvent purchaser not to pay the promissory note given therefor may enforce a trust therein against one who holds the property as security for the *pre-existing* debt of the fraudulent purchaser. Especially is this true when the security holder had, in legal effect, made himself a party to the fraudulent transaction of the purchaser.

**BILLS AND NOTES:** Indorsement—Liability of Indorsee. One who
2  has been induced to issue his check because of the criminal fraud of the payee may not recover the amount thereof from an indorsee on the naked showing that said indorsee received the said check from said payee in settlement of a like criminal fraud perpetrated by said payee on said indorsee.

**SUBROGATION:** Fraud—Tracing Proceeds. The drawer of a fraud-
3  induced check who traces the check and the proceeds thereof immediately and directly into the satisfaction of a mortgage may, *against the wrongdoer and against all others who necessarily profit by the satisfaction without parting with value,* be subrogated to the former right of the satisfied mortgage.

**TRUSTS:** Constructive Trusts—Vendor's and Equitable Lien Contrasted. The power of a court of equity to establish an equitable lien is quite independent of the law applicable to a vendor's lien.

Headnote 1: 39 Cyc. pp. 172, 175. Headnote 2: 8 C. J. p. 380. Headnote 3: 37 Cyc. pp. 381, 467. Headnote 4: 37 C. J. p. 315.

Headnote 1: 26 R. C. L. 1236.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

DECEMBER 14, 1926.

Suit in equity in two counts, to impress a trust upon property, title to which was originally held by the plaintiff. The averment is that the property was obtained from plaintiff fraudulently, and the right to impress a constructive trust is predicated upon such fraud. The defendant Halverson is charged as the wrongdoer in each transaction, and the defendant Goldsworthy, the present owner of the property, is charged with notice of the fraud. The decree of the trial court awarded relief somewhat less than that prayed in the petition. The defendant Goldsworthy has appealed.—*Modified and affirmed.*

*Heald, Cook & Heald* and *Sumner D. Quarton,* for appellant.

*Harold S. Thomas,* for appellee C. S. Bogle.

*Howard L. Bump,* for appellee L. W. Karlen.

*George Harnagel,* for appellee Iowa Investment & Mortgage Co.

EVANS, J.—I.   On and prior to April 21, 1923, the plaintiff was the owner of a residence property on Seventh Street in Des Moines. On that date he conveyed it by special warranty deed to defendant J. T. Goldsworthy, pursuant, however, to a contract of purchase and sale previously made between plaintiff and the defendant Halverson. The contract of sale required a cash payment of $1,000. The property was to be conveyed subject to a mortgage of $1,600 thereon, and a balance of $2,800 was to be represented by the note of Halverson and his wife,—the total consideration being $5,400. The cash payment

1. TRUSTS: constructive trusts: fraudulent purchase of property.

was made and the note was executed. If plaintiff's case were dependent upon proof of specific false representations made at the time of the conveyance, the plaintiff would stand before the court with a very doubtful pleading, and with a dearth of specific evidence at that point. Naturally, the defendant, as appellant, has directed his projectiles to this very point, attacking both the paucity of allegation in the petition and of evidence in the record. The petition in terms charged fraud and false representations, but specified no act or representation. It was clearly vulnerable to attack for that reason. But the defendant raised no question in the district court as to its sufficiency, but joined issue thereon. The broad issue of fraud in the transaction was voluntarily litigated, and it is too late to complain here of the insufficiency of the petition on such issue.

The negotiations for the purchase of the plaintiff's residence were had within the few days preceding April 21st. It was not a verbose affair. The evidence discloses that the contract was agreed upon with the use of comparatively few words. Were it not for a certain setting or background to the transaction, we should incline to hold that the plaintiff had failed in his proof. Fraud has its diversities of form. It is not confined to affirmative acts or representations. It may consist in negation and concealment. Silence even may be a part of its art. The record discloses that Halverson (now in the penitentiary) was the personification of fraud. In April, 1922, he had negotiated to Goldsworthy two purported mortgages for $2,500 and $7,500, respectively, and had obtained therefor from Goldsworthy the sum of $10,000, less $150 of a discount. The smaller mortgage bore 8 per cent interest, and the larger 7½ per cent, and they purported to be first mortgages on lands in Jasper and Warren Counties, respectively. In the early part of April, 1923, Goldsworthy discovered that his mortgages were spurious. Up to this time, Halverson was a man of good reputation in the community, and even stood high in its estimate. Shortly prior to the transaction of sale of the residence, he had also negotiated mortgages to the plaintiff to the amount of $9,000 or $10,000. These also were spurious. Their spurious character, however, had not been discovered by plaintiff at that time, and the plaintiff still trusted him, as Halverson necessarily knew. Goldsworthy, immediately upon his discovery, pressed Halverson to make good his loss.

It was with a view of appeasing Goldsworthy that Halverson bought the Bogle residence, and for the purpose of turning the same over to Goldsworthy as security for his claim. He told Bogle casually that he was negotiating with Goldsworthy for the purchase of a big mortgage, and that he wanted to turn in this property to Goldsworthy on the trade. This, in substance, was the extent of his affirmative representations. It was pursuant to this representation that Bogle conveyed the property direct to Goldsworthy. Halverson was in fact insolvent. He knew that he was reputed solvent and even prosperous. His casual representation to Bogle that he was purchasing a big mortgage from Goldsworthy was calculated to confirm such reputation in the mind of Bogle, and was undoubtedly intended for that purpose. Taking the record as a whole, we deem it very clear that Halverson never intended to pay the $2,800 note. He did later take it up, by the purported payment thereof in the form of checks, which proved to be spurious. One check in partial payment is to be excepted from this statement. Upon this broad view of the case, as between the plaintiff and Halverson alone, was the plaintiff, upon his discovery of the real facts, entitled to repudiate the transaction as fraudulent on the part of Halverson, and to impress a constructive trust upon the property if it had remained in Halverson's hands?

In the light of the fact that he had already perpetrated a gross fraud upon Bogle, and in the light of the subsequent corroborating fact that he purported to pay the note with forged checks, and obtained possession and cancellation thereof in such a manner, no one can doubt that, at the time of the purchase of the property and the execution of the $2,800 note, Halverson fraudulently intended not to pay it. He procured the conveyance to be made direct to Goldsworthy by a false and fraudulent pretense that he was getting full consideration therefor; whereas he was in fact intending to put the property beyond the reach of Bogle as his creditor. This presented at least one specific act of fraud. Halverson knew his own insolvency, and knew that Bogle did not suspect it. He knew also that a transfer of the property to Goldsworthy for valuable consideration without notice would prevent rescission on the part of Bogle, when he should discover either the past or the present fraud perpetrated upon him.

II.  Is the property thus obtained from the plaintiff to be deemed subject to a constructive trust in the hands of Goldsworthy?  Did he take the property for value and without notice?  He claims to hold the property only as security for his debt.  His version of the transaction is that he holds the title as security for $4,200 of his debt.  This amount represents the margin between $5,800 and the $1,600 mortgage.  He paid nothing, in fact.  He has parted with nothing.  We think that he is not in a position to claim priority of equity over the plaintiff.  Having parted with nothing, he stands strictly in the shoes of Halverson.  Moreover, we think he must be held chargeable with notice also of the fraud practiced upon plaintiff.  It is the contention of Goldsworthy, as a witness, that he did not at that time know or believe that Halverson was the forger of his spurious mortgages; that he did not investigate the subject very much; that Halverson had promised to make good the loss; and that he relied upon his promise.  Sufficient to say that his testimony on this subject is very inconsistent with itself.  The deposition of Halverson himself was taken at the prison, and was read in evidence.  It was not contradicted in any respect by Goldsworthy, although he was called to the witness stand after the reading of the deposition into the record.  From this deposition it appears that Goldsworthy did believe and charge that Halverson was guilty of the forgery.  He advised Halverson that he had employed attorneys, who had investigated the matter, and that they had discovered sufficient evidence to put him behind the bars; that he himself was holding them back as best he could; that he could not hold them back much longer unless speedy results were obtained.  There is no fair doubt, upon this record, but that Goldsworthy brought to bear upon Halverson all the coercion that the situation was capable of.  This is no less true because he did it under profession of friendship, and with an expression of desire to prevent prosecution, if possible.  Halverson told him of his opportunity to purchase the Bogle property upon a small cash payment, and it was agreed between them in advance that he would turn the property over to Goldsworthy.  Goldsworthy called at the residence and looked it over before the purchase was actually made.  He made himself a party to the transaction by taking a deed direct from Bogle.

Indeed, the first legal presumption is that Goldsworthy took

this title in resulting trust for Halverson. The plaintiff could rest upon this presumption, leaving the burden upon Goldsworthy to prove the contrary. If this presumption should not be overcome, no notice would be necessary to Goldsworthy. The testimony of Goldsworthy confirms the presumption, in a qualified way. He admits that he holds the title in trust for Halverson, but claims a lien thereon for the payment of his debt. The alleged agreement between him, and Halverson was that he was to sell the property and to apply the proceeds, if necessary, upon his debt. He has not sold it; he has therefore not applied it; nor has he parted with anything of value because thereof. Upon such view of the case, notice to him was not essential.

On the other hand, the conclusion is quite unavoidable that he knew then, as well as he knows now, that the acquisition of the property by Halverson, from the plaintiff, and the transferring of the same to him on his claim, would operate as a fraud upon the plaintiff.

We hold, therefore, that the plaintiff has a superior equity, and that the lien of Goldsworthy is subject to the infirmity of Halverson's title.

III. In the second count of his petition, the plaintiff claims a judgment against Goldsworthy for the sum of $2,000 for the conversion of a check which Halverson had fraudulently ob-

2. BILLS AND NOTES: indorsement: liability of indorsee.
tained from him. In June, 1923, Halverson borrowed $2,000 from the plaintiff, and gave his note therefor. He received from the plaintiff a check for $2,000, and transferred the check to Goldsworthy, to apply upon his claim. The check was paid in due course by plaintiff. The testimony of the plaintiff in regard to this transaction is as follows:

"In regard to the $2,000 check that I gave him, he said he needed some money for a client. I would not say that he told me who it was. I loaned him this money and took a note from him. That is all there is to that transaction."

The foregoing is all the testimony there is in the record as to the immediate circumstances of obtaining the check. These circumstances had the same background as the former transaction in April. We shall assume at this point, for the purpose of argument, that the circumstances surrounding the parties are sufficient to show intentional fraud on the part of Halverson, and

that the plaintiff would be entitled to equitable relief as to him, if he could trace the proceeds of the check into property still in the hands of Halverson. The trial court awarded judgment against Goldsworthy. Goldsworthy applied this check as a credit upon the indebtedness. Did he have notice of the fraud? The first obstacle which the plaintiff encounters as to this transaction is that nothing is claimed for it or predicated upon it, in his petition. The second count of his petition averred that Halverson had obtained $2,000 from him by false and fraudulent representations in the purchase of a certain fictitious mortgage, in that he had represented such mortgage to be good and valuable. It is further averred in the petition that Goldsworthy knew that Halverson was engaged in the sale of fictitious mortgages, and knew that the check had been obtained from the plaintiff by the usual fraudulent methods. The circumstances proved by the plaintiff are distinct from, and even contradictory to, those pleaded in the petition. Not only is there no averment in the petition in relation to this transaction of borrowing, but there is no evidence that Goldsworthy was personally connected therewith or knew thereof, unless it can be said that Goldsworthy's knowledge of the fraud perpetrated on him by Halverson charged him with a duty of discovery of the source of all funds which Halverson might thereafter pay to him; and likewise the discovery of the circumstances under which such funds were received. The check was signed by the plaintiff. Goldsworthy therefore knew the source of the funds. The fact that Goldsworthy exercised a moral coercion upon Halverson in the collection of his debt, is a circumstance proper to be considered, and to it much weight could be accorded. But it would be a harsh rule which would require such a creditor to denounce all future transactions with his debtor, and to presume that all funds produced by him emanated from fraudulent transactions. Unless we are prepared to announce such a rule, it cannot be said, upon this record, that Goldsworthy had notice of any fraud in the transaction out of which plaintiff's check resulted.

We hold, therefore, that the judgment entered against him on this item cannot be sustained.

IV. We come to the case of Karlen. Karlen had brought an action against the same defendants, and later appeared by intervention in this action brought by plaintiff. The two actions

**3. SUBROGATION:**
**fraud: tracing**
**proceeds.**

were consolidated by agreement, and Karlen was treated as intervener herein. Subsequent to the events which we have considered in the foregoing divisions, Halverson sold to Karlen a spurious mortgage. He purported to act as agent for Goldsworthy, who was the purported mortgagee and holder of the mortgage. The mortgage was for $6,000, and Halverson purported to sell it for Goldsworthy to Karlen. He produced a purported assignment thereof from Goldsworthy, and received from Karlen the face value. Payment was made by Karlen by checks. Halverson presented to Karlen purported written directions signed by Goldsworthy that a check for $1,688 be drawn to Halverson. This request was complied with, and Halverson received from Karlen such check. He explained to Karlen that the purpose of such check was to pay off a mortgage existing upon property of Goldsworthy's. The mortgage referred to was that upon the Bogle property, which has been considered in the first division of this opinion. Halverson transferred such check to the holder of the $1,600 mortgage in full payment of the same, with interest, and obtained thereby a release of the mortgage. This mortgagee was one of the investment companies of Des Moines. The check was applied upon the cancellation of the debt, and the mortgage was accordingly released. This company was a taker for value without notice. The proceeds of the check, therefore, in its hands are not subject to pursuit. The question remains whether Karlen may pursue the product of such proceeds, as represented by the release of the mortgage. The release of the mortgage operated to the benefit of Goldsworthy as a lien holder, and of Halverson as equitable owner of the Bogle property. In so far as Bogle is entitled to impress a constructive trust, such release operated to his benefit, as a discharge of a prior incumbrance. As against Halverson, Karlen is clearly entitled to relief. As against Goldsworthy, he is entitled to relief unless Goldsworthy parted with value as a consideration for such benefit. As to Bogle, the same thing is true. The benefit thus resulting to Goldsworthy or to Bogle was purely gratuitous, so far as they were concerned. It cost them nothing. They are in no position, therefore, to resist the relief to which Karlen would otherwise be entitled, as against Halverson. The decree of the trial court in effect subrogated Karlen to the lien of the mortgage which had been discharged

by the use of his check.  It awarded judgment in his favor against Halverson,. and established the same as a first lien upon the property, and as in lieu of the mortgage.  The relief thus granted was clearly proper.  Karlen asked relief also by reason of another check which was traced into the hands of Bogle.  The trial court denied the relief.  Though Karlen has pressed his claim to such relief before us, he did not in fact appeal from the decree.  This is a sufficient answer to that portion of his argument here.

The relief extended by the decree to the plaintiff was a judgment against Halverson for the unpaid amount of his $2,800 note, and that it.be established as a lien upon the property as against Goldsworthy, and·subject only to the lien of Karlen for $1,688.  This relief was less than the establishment of a constructive trust and less than the relief prayed.  But the plaintiff has not appealed.

We do not overlook at this point that the plaintiff's lien established by the decree is described therein as a vendor's lien. Defendant urges upon us that his right to a vendor's lien was wholly lost by the taking of a surety on the $2,800 note. The twofold answer to. this contention is:  (1) That the power of a court of equity to establish this lien upon equitable principles is quite independent of the law applicable to a mere vendor's lien, and quite independent of any classification of the lien; (2) that the fraud of Halverson vitiated the alleged waiver as completely as it vitiated the major transaction itself.  The latter rule is expressly recognized by our vendor's ·lien statute, Section 10058, Code of 1924.

4. Trusts: con-structive trusts: vendor's and equitable lien· contrasted.

The decree entered below will be modified, therefore, so as to eliminate the judgment against Goldsworthy for $2,000 in favor of plaintiff.  In all other respects, the decree will be affirmed.—*Modified and affirmed.*

De Graff, C. J., and Albert and Morling, JJ., concur.