NELS JENSEN, Executor, Appellant, v. DAGMAR PHIPPEN et al., Appellees.

No. 44377.

JUNE 21, 1938.

Graham & Graham, for appellant.

Charles S. White, for appellees.

RICHARDS, J.—On July 3, 1934, Christen Jensen Aaen deeded to his daughter Dagmar Phippen, appellee, a residence property in Exira, of the then value of $700 to $800. In the deed Aaen reserved to himself a life estate in the property. He died on July 15, 1936. The plaintiff, as his executor, seeks in this action to set aside the deed upon the ground that its execution was procured by the grantee through fraud and undue influence. The district court heard the case on the merits and dismissed the petition. Plaintiff has appealed.

The parties concede that if this deed has validity it is because it constituted an executed gift. As to any active perpetration of fraud, or any overt attempt to induce or influence this grantor to make the deed we find no testimony. There remains the issue of constructive fraud, and on the record there arise with reference thereto the queries whether the deed was a gift obtained by a person standing in a confidential or a fiduciary relation to the donor, and consequently presumably fraudulent and prima facie void, and whether, if such relationship existed, defendant has made such showing of facts that it is to be concluded that the presumption has been overcome. Samson v. Samson, 67 Iowa 253, 25 N. W. 233; Curtis v. Armagast, 158 Iowa 507, 138 N. W. 873; Roller v. Roller, 201 Iowa 1077, 203 N. W. 41.

The rule that relationship between a grantor and a grantee may be so intimate, confidential, and fiduciary that the burden may properly be placed upon the grantee, to show the bona fides of a transaction of this character, is, of necessity, applied according to the peculiar circumstances of the particular case where the question arises. Osborn v. Fry, 202 Iowa 129, 209 N. W. 303. Mere blood relationship does not of itself create the confidential relationship calling for the application of this rule. Kramer v. Leinbaugh, 219 Iowa 604, 259 N. W. 20; Curtis v. Armagast, 158 Iowa 507, 138 N. W. 873. And while the phrases "fiduciary relations" and "confidential relations" are frequently used as convertible terms, strictly they are of differing significance. Curtis v. Armagast, 158 Iowa 507, 138 N. W. 873.

■ As to whether fiduciary relations existed between this grantor and grantee, it does not appear that the grantee had transacted or attended to or advised concerning any of grantor's business or property, nor does it appear that the grantee in any way had the handling or control of any of his property or business affairs. So the record does not warrant a holding that the grantee stood in a fiduciary relationship in the sense of being a trustee of or trusted adviser concerning the grantor's property and affairs.

As to there having been a confidential relation not strictly fiducial, but nevertheless in some cases recognized as within the rule mentioned, as for instance when there is consanguinity, coupled with dependence for personal care and attention and for the amenities and necessities of life, the parent's life being on the wane, the child having become the 'dominant personage in the relationship and the parent the dependent one, trusting himself and his interests to the child's advice and guidance, the evidence in this case covers a considerable period of time. In August 1923 Aaen and his wife deeded to this daughter Dagmar, and Thomas her husband, the property that is in controversy. The then consideration of $2,500 was never paid excepting the sum of $200 paid when the deed was executed. The Phippens expended $156 for betterments and repairs. They have lived in the property continuously, following this conveyance in 1923 down to the time of the trial. On November 2, 1929, the Phippens relinquished the place and conveyed it back to Aaen. During this period of ownership they were unable to keep the taxes paid, Aaen assisting by paying a portion. Mrs. Aaen also loaned money for that purpose, to the Phippens, which they repaid her. The house on the premises in dispute is one of eight rooms. From 1924 or 1925 until Mrs. Aaen died in March 1930, the Aaens as well as the Phippens lived in this house, under mutual arrangements not detailed in the record. Following the decease of his wife Aaen continued to live in the house, and to have his meals with the Phippens, until his death, with the exception of periods, sometimes of one to three months duration, when he was away visiting friends and other children. In February 1931 Aaen, in writing, leased the property to the Phippens for one year, in consideration of $10 per month, the use by Aaen of a room, and board and washing. Although the Phippens were unable to make any of the cash payments, in September 1932 another

such lease was made for one year, in consideration of $5 per month and board, lodging, heat, washing, and home comforts for Aaen. A daughter of defendants testified that Aaen told her, a few days before July 3, 1934, that he was going to give the home to Mrs. Phippen because she and all the family had been good to him. Another witness, who appears to have been entirely disinterested, and who was an old friend of the family, testified that in March 1935 decedent said to her that Dagmar had always been good to him and that "this home is going to Dagmar." One of Aaen's sons, Marius, testified that he had a conversation with his father in August 1934 concerning the deed his father had made to Dagmar. It is his testimony that after talking about it Aaen finally asked what Marius thought about it and asked, "You think it is all right?" Upon Marius saying that it was, Aaen said that is what he thought was the best thing to do.

Upon the whole record, from which we have set out a number of the more salient features, it is our opinion that a confidential relationship, within the intent of the rule, has not been established. In one sense the daughter was the dependent one. It was she who needed, and it was the parent who had that which was being given, during these years. Aaen had not reached a state of dependence on others. He controlled his own property at the time the deed was made. He had a bank account and a safety deposit box for his papers. When he died he was survived by 10 children, ranging in age from 36 to 56 years. His accumulations had not been large. His executor reported some thing over $1,500 consisting of collectible notes and a bank deposit. Some of the notes evidenced loans to children other than Dagmar. Between Aaen and all his children there were friendly relations, but Dagmar seems to have been the child in assisting whom both parents manifested particular interest and willingness, continuously, from and after 1923. The evidence is such that this attitude of the parents, and of Aaen after the death of his wife, exhibits simply the ear marks of parental affection, and in the record we find no circumstances or testimony that may be said to indicate that Dagmar was a dominant personality in her relations with her parents or with either of them. It is true that the presumption arising from a confidential relation is greatly strengthened by proof of such matters as inexperience in business, physical condition, and no doubt, impaired mental

condition, of the grantor or donor. Hull v. Mitchell, 181 Iowa 51, l. c. 58, 162 N. W. 235. And in this case appellant introduced testimony in an effort to show that Aaen was of unsound mind when he executed the deed. One witness testified that Aaen was very forgetful, but expressed no opinion as to soundness of mind excepting that he thought Aaen was capable of executing a will which the witness signed as an attesting witness on November 3, 1933. Plaintiff also offered the testimony of a physician who had attended upon Aaen in an illness in July 1935. From Aaen's condition in this illness the physician testified that it was his opinion that Aaen was of unsound mind on July 3, 1934. Without detailing the conjectural nature of this opinion, and the uncertain factors assumed by the physician, as freely admitted by him, we are convinced, from a careful examination of the record and the testimony of the other witnesses who with frequency observed and conversed with Aaen during the spring and summer of 1934, that it cannot fairly be said that Aaen was of unsound mind.

This executed gift, not having been shown to have been the result of actual fraud, or of undue influence exerted on the donor, and the presumption that there was constructive fraud not arising, it follows that the decree of the trial court dismissing the petition on the merits must be and is affirmed.—Affirmed.

STIGER, C. J., and HAMILTON, ANDERSON, SAGER, DONEGAN, MITCHELL, KINTZINGER, and MILLER, JJ., concur.