LESTER M. POPEJOY et ux., appellants, v. RALPH EASTBURN, appellee.

No. 47609.

(Reported in 41 N.W.2d 764)

MARCH 7, 1950.

REHEARING DENIED MAY 5, 1950.

Ralph H. Munro, of Fairfield, for appellants.

Thoma & Thoma, of Fairfield, for appellee.

MANTZ, J.—Plaintiffs' action is at law. In their pleading they demand judgment against defendant for $1200, interest and costs as damages suffered by them in the sale of their property in Fairfield, Iowa; allege that in said sale, defendant, while purporting to advise and act for plaintiffs and without their knowledge or consent, bought such property for himself and wife and at the same time sold it to other parties for $1200 more than the price paid plaintiffs. When plaintiffs rested, upon motion of defendant the court directed a verdict in favor of defendant. This appeal followed.

We will briefly summarize the claim of appellants as set forth in their pleadings: That in December 1946 they owned and resided in their residence in Fairfield, Jefferson County, Iowa; that they were then contemplating the purchase of an eighty-five-acre farm near said city; that while so doing Lester M. Popejoy, one of the appellants, went to the Iowa State Bank & Trust Company of Fairfield, and consulted its president, appellee herein, as to said contemplated purchase and the financing of said transaction, stating that they desired to secure a loan of $2000 on the residence property, and did secure said loan from said bank through appellee and did execute and deliver to appellee a promissory note and mortgage on said property to become due March 1, 1947; that thereafter appellants entered into a contract to purchase the eighty-five acres for $6600 and used the $2000 to make the down payment and contracted to pay the balance on or about March 1, 1947; that about February 15, 1947, the appellants, in seeking to finance the balance of the purchasing price on the eighty-five-acre tract, again consulted appellee and advised him that they were trying to raise funds for that purpose by selling the residence; that appellee advised appellants that he knew of some people who he thought might be interested in purchasing the town property, and also that he (appellee) would try to see these people and find out how much they would be willing to give for it; that a few days thereafter appellee informed appellants that he had seen these people and that they would give $3200; that appellants advised appellee that they could not afford to take such amount; that appellee advised appellants that he would see the people again and see if they would pay more for the

property; that about February 20, 1947, appellee told appellants that he had seen the people again and that the best they would do would be to pay $3300 for the property; that appellants then informed appellee that if the $3300 was all he could get for the property they would have to take it in order to complete the purchase of the eighty-five acres on March 1, 1947; that appellee stated that if he sold the town property to these people he had mentioned that there would be no commission charged on the sale and that the entire selling price could be applied on the farm; that appellee then prepared and presented to appellants a contract to be signed by the appellants, the pertinent parts being as follows:

"This contract made and entered into this 20th day of February, 1947 by and between Lester M. Popejoy and Alberta B. Popejoy (husband and wife) and Ralph Eastburn, agent, all of Fairfield, Iowa, whereas, Ralph Eastburn acting as agent has made an offer of $3300 for the following described real estate: Lots seven and eight in Block twenty-three of the New Plat to the City of Fairfield, Iowa. And whereas, parties of the first part, Lester M. Popejoy and Alberta B. Popejoy have accepted this offer and agree to sell the above described property. Party of the second part, Ralph Eastburn, acting as agent agrees to pay for said above described real estate in the following manner: $500 upon the signing of this contract, the balance of $2800, upon the delivery of Warranty Deed and merchantable abstract of title by parties of the second part. It is agreed between both parties that settlement date and possession of the above described real estate shall be on March 10, 1947. * * * Parties of the first part acknowledge receipt of payment of $500 upon the purchase price of this real estate. Dated and signed this 20th day of February, 1947. Lester M. Popejoy, Alberta B. Popejoy. Ralph Eastburn as Agent, Party of second part."

Appellants further allege that on February 27, 1947, appellee presented to them Wilbur W. Smith and Kathryne Smith, and represented them to be the purchasers of said town property and caused appellants to execute a warranty deed to the alleged purchasers; that thereupon appellants executed said

warranty deed conveying to said Smiths the town property; that appellants later learned that the actual price which the Smiths paid appellee for said property was $4500 instead of $3300, as stated by appellee to appellants; that the appellee in carrying out the transaction was acting as the confidential adviser and agent of the appellants and that he had fraudulently concealed from them the actual purchasers and the selling price of the town property; that he had advised appellants that the purchase price was $3300, whereas the selling price was $4500, and that appellee thereby obtained $1200 of the said selling price and has since retained it and refuses to pay or account for same.

The answer of appellee is a general and specific denial of the parts of appellants' petition wherein they charge him with being the agent and confidential adviser of appellants; alleges that he was simply acting in behalf of the bank in advising as to the sale of the town property and the purchase of the eighty-five acres and that he did not take advantage of them; that after he had contracted to purchase the town property he interested Wilbur W. Smith and Kathryne Smith in said property and that he entered into a contract to sell said property to them; that he so advised appellants and they agreed to make the deed to said Smiths; that appellee specifically denied any agency for appellants or that as such he sold said town property to said Smiths.

Appellants in their reply make specific denials of the affirmative allegations of appellee's answer and allege that they had no knowledge that appellee was selling the town property to himself and his wife and deny that they ever consented to selling it to said persons.

I. The principal issue in the case is whether appellee was the agent, confidential adviser of appellants—or whether he acted in a fiduciary capacity for them in making the sale of their property in Fairfield, or whether in the transaction his acts and conduct constituted a fraud upon them.

The trial court in directing a verdict against appellants held as a matter of law that the evidence in regard to the pleaded claims was insufficient to warrant a verdict for the appellants.

II. Appellants set forth and rely upon three errors. Such claimed errors may be summarized as follows:

First: The action of the trial court in directing a verdict that there was no evidence of any confidential relation existing between the parties and that there was no evidence of any breach of duty owing by defendant to plaintiffs.

Second: That there was no evidence of any kind of false representations made by the defendant in connection with the sale of the property.

Third: That the evidence was insufficient to sustain the submission of any question raised upon plaintiffs' petition.

Appellants in their brief state that the errors claimed present closely related propositions of law and fact and that the brief points and arguments will be presented in one division. In this opinion we will, to some extent, follow the same outline.

When we examine the appellants' petition we find an allegation that the defendant, in carrying out the transaction, was acting as the confidential adviser and agent for the plaintiffs; that the defendant fraudulently concealed from the plaintiffs the actual purchase price at which the Smiths agreed to and did actually purchase said town property.

In another paragraph of their petition, appellants alleged that in the various transactions appellee was their confidential adviser.

Summed up, appellants' claim is that, taking into consideration all of the facts and circumstances of the whole transaction, there was evidence from which a jury would find in their favor on one or more of the issues tendered. The trial court ruled against them. This we hold was error.

III. The court's ruling calls for a review of the evidence. In passing upon the evidence appellants are entitled to have the same considered in the most favorable light in their behalf.

It appears from the record that on December 10, 1946, appellants owned a residence in Fairfield, Iowa; that they were then contemplating the purchase of an eighty-five-acre-farm tract near that place at a price of $6600; that in case they purchased this farm they would have to finance the transaction by placing a loan on the city property and the eighty-five acres; that appellee was then president of the Iowa State Bank & Trust

Company of Fairfield, Iowa; that on that date Popejoy went to the bank and told appellee of the contemplated deal for the eighty-five acres and asked his advice, stating that if he made it he would have to borrow money to finance it. Popejoy asked appellee to inspect the eighty-five acres and advise him how much could be borrowed thereon. Appellee looked at the farm and told Popejoy that it looked like a good deal and that he would loan $3600 thereon. Popejoy advised him that he would have to make a loan on his Fairfield residence and, at the request of Popejoy, appellee arranged such loan and took from appellants their note and mortgage for $2000, due March 1, 1947. This $2000 was deposited in appellee's bank. Following this, Popejoy contracted to purchase the eighty-five acres for $6600, using the $2000 then in the bank to make the down payment, and agreed to pay the balance on or about March 1, 1947. Appellants then sought to sell the Fairfield residence, listing it with brokers at $4500.

A few days prior to February 20, 1947, appellant Lester M. Popejoy went to the bank and there advised appellee that to complete the eighty-five-acre deal they would have to sell the city property; he told appellee what he was asking for it. There were several talks between Popejoy and appellee about the whole deal. We will set out some of Popejoy's testimony bearing on that matter:

"I was holding our town property for sale and it was our intention to move onto this farm. I did disclose to Mr. Eastburn the price at which we were holding our town property. It was $4500. Just at different times I would happen to see him was all. I had talks with Mr. Eastburn from then on during the months of January and February about selling that town property. About three days before the 20th, when the contract was signed, I had a conversation with Mr. Eastburn. It started off, he was going to come down and tell me what my place was worth and he was going to tell me what I could get for it, he knew some people that would probably be interested. He did not tell me who the people were. Q. What did he say he would do? * * * A. Mr. Eastburn? Q. Yes. A. He first told me he could get thirty-two hundred for it. He did not name the parties who would give it. No, he never told me he was inter-

ested in purchasing it. I told him it wasn't enough money. He told me he would see if he could get more out of them and I was going back that evening and I didn't go back but I went back the next morning and he said he got them up a hundred dollars. That would be thirty-three hundred and that was their limit. * * * I did not know at any time that he was in any way interested in purchasing it either for himself or for somebody else, other than these people he talked about. * * * I went back the next morning and I had to say yes or no that morning, and I didn't know what else to do. That was the 20th. My wife went with me the second time. I was down there first and I went back and we talked it over and we didn't know what else to do so we went back the second time. That's when the contract was signed. Exhibit P-1. I would say Exhibit P-1 is the contract. Mr. Eastburn prepared it. He did not tell me who he was acting as agent for."

It is the claim of appellee that in the cross-examination of Popejoy he gave testimony which contradicted and refuted that given by him in chief; that before the sale he was advised that appellee was agent for some other person; that he read the contract and knew its contents; that he knew of the sale to the Smiths and of he and his wife giving to such purchasers a warranty deed to the Fairfield property. Popejoy, as a witness, gave his version of the whole deal. Any conflicts existing would be proper matters for the consideration of the jury.

In the sale of the Fairfield property and the deal involving the purchase of the eighty-five acres, what was the relationship between appellants and appellee? The former claim that the latter was their agent and at the same time their confidential adviser. Appellee claims that he was acting for himself and wife in both deals—first as buyers, and second as sellers.

The relationship of principal and agent is not dependent upon express agreement between the parties—it may be implied from either words or conduct of the parties, depending upon the circumstances of the case. 2 C. J. S., Agency, section 23; Vincent v. Tremain, 182 Iowa 611, 166 N.W. 71; Restatement of the Law, Agency, sections 1, 15; 2 C. J. S., Agency, section 1; 2 Am. Jur., Agency, section 2; Haswell v. Standring, 152 Iowa 291, 132 N.W. 417, Ann. Cas. 1913B 1326; O'Meara

v. Lawrence, 159 Iowa 448, 141 N.W. 312; Preston v. McClelland, 196 Iowa 13, 193 N.W. 434; Fryer v. Harker, 142 Iowa 708, 121 N.W. 526, 23 L. R. A., N. S., 477; Brown & Co. v. Cash, 165 Iowa 221, 145 N.W. 80; Rorebeck v. Van Eaton, 90 Iowa 82, 57 N.W. 694.

In Greenlease-Lied Motors v. Sadler, 216 Iowa 302, 307, 249 N.W. 383, 386, we said:

"The term 'agency' was not used, but 'where the facts are such as to create an agency, as a matter of law, the actual intention of the parties and the name they give to their relation are immaterial; they cannot agree that facts which in law establish the relation of agency shall not establish that relation or shall establish a different relation.' 31 Cyc. 1216; 2 C. J. 434. 'The relation of agency does not depend upon an express appointment and acceptance thereof, but it may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. It may be implied from a single transaction.' 2 C. J. 435, sec. 32; Aga v. Harbach, 127 Iowa 144, 102 N.W. 833, 109 Am. St. Rep. 377, 4 Ann. Cas. 441; Grant v. Humerick, 123 Iowa 571, 94 N.W. 510; Harrison v. Legore, 109 Iowa 618, 80 N.W. 670; Trotter v. Grand Lodge, 132 Iowa 513, 109 N.W. 1099, 7 L. R. A. (N.S.) 569, 11 Ann. Cas. 533."

In the case of State v. Reynolds, 209 Iowa 543, 546, 228 N.W. 283, 285, this court had before it the question of agency and its establishment. Therein we quoted from 21 R. C. L. 820: "Direct evidence is not indispensable,—indeed, frequently is not available,—but instead, circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract." See also Burlington Sav. Bk. v. Prudential Ins. Co., 206 Iowa 475, 218 N.W. 949. In Kann v. Fish, 209 Iowa 184, 191, 224 N.W. 531, 534, this court said: "Agency may be created by express contract between the principal and agent, or may be created by implication."

In Preston v. McClelland, supra, a broker brought suit to collect a commission. Such broker had listed a property for sale; he submitted an offer but did not disclose to the owner of

the listed property the identity of the prospective purchaser. The offer was not accepted and the owner sold to another. It was the claim of the owner (defendant) that the offer was not the best the purchaser was willing to pay and questioned the good faith of the broker in the offer submitted. This court stated that this was the decisive question in the case and that defendant's (appellant's) position was well taken. In discussing such question this court said, at page 18 of 196 Iowa, page 436 of 193 N.W.:

"The trial court instructed the jury that it was the duty of plaintiff to disclose to the defendant the name of his customer, unless the jury should find that defendant unqualifiedly and unconditionally accepted the offer, and consented to the plaintiff's withholding the name of the purchaser, etc. No mention is made in the instruction of the failure of plaintiff to inform defendant of the more advantageous cash offer. There is no pretense that the plaintiff communicated this matter to the defendant, or that defendant had any knowledge of it until plaintiff so testified on the trial. We think there was a breach of faith on the part of plaintiff towards his principal, the defendant, and that, under the record as now presented, he is not entitled to recover. He may not serve two principals without the intelligent consent of both, and if he undertakes to do so, he may not recover. Plaintiff owed the defendant the utmost good faith. Lindt v. Schlitz Brew. Co., 113 Iowa 200; Fryer v. Harker, 142 Iowa 708 (23 L. R. A. [N. S.] 477); Wilson v. Webster, 88 Iowa 514; Vennum v. Gregory, 21 Iowa 326; Braden v. Randles, 128 Iowa 653; Steele v. Crabtree, 130 Iowa 313; Morey v. Laird, 108 Iowa 670; Haswell v. Standring, 152 Iowa 291; Hewitt & Hosier v. Lichty Mfg. Co., 147 Iowa 270; Bracken v. Jackson, 159 Iowa 424, 434; Leonard v. Olmstead, 141 Iowa 485; 21 Ruling Case Law 828. The cases might be multiplied. These are sufficient."

Many other cases might be cited from this and other jurisdictions but we think the above announce the correct rule.

IV. Appellants alleged, in pleading and brief, that the appellee in the whole transaction did not act in good faith, and violated the duty he owed them; also, that while so doing he

occupied towards them a confidential relation. The question of when this relationship arises or exists has frequently been considered by our courts.

"A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." Restatement of the Law, Trusts, section 2(b).

In the case of Osborn v. Fry, 202 Iowa 129, 130, 209 N.W. 303, 304, there was involved the question of confidential or fiduciary relationships. There Justice Faville, speaking for the court, said:

"It is difficult to lay down a hard and fast rule in such cases, except the general rule that the circumstances of any particular case may show such confidential, fiduciary, and trust relation as that the burden to establish the *bona fides* of a conveyance that is attacked should rest upon the grantee."

See also Merritt v. Easterly, 226 Iowa 514, 284 N.W. 397; Jensen v. Phippen, 225 Iowa 302, 280 N.W. 528; Burger v. Krall, 211 Iowa 1160, 235 N.W. 318; Curtis v. Armagast, 158 Iowa 507, 138 N.W. 873; McNeer v. Beck, 205 Iowa 196, 217 N.W. 825; Pruitt v. Gause, 193 Iowa 1354, 188 N.W. 798; Allen v. Wegman, 218 Iowa 801, 254 N.W. 74; First National Bank v. Ten Napel, 198 Iowa 816, 200 N.W. 405; Wilson v. Rentie, 124 Okla. 37, 254 P. 64; Scott v. Brown, 90 Ind. App. 367, 157 N.E. 64; Dick v. Albers, 243 Ill. 231, 90 N.E. 683, 134 Am. St. Rep. 369; Berry v. Stevens, 168 Okla. 124, 31 P.2d 950; McNeill v. Dobson-Bainbridge Realty Co., 184 Tenn. 99, 195 S.W.2d 626; Crossman v. Keister, 223 Ill. 69, 79 N.E. 58, 8 L. R. A., N. S., 698, 114 Am. St. Rep. 305.

In the light of the rules above set forth we hold that there were in the record sufficient facts and circumstances to require the submission to the jury the question of confidential relationship as claimed by appellants. We think the jury might properly find from the evidence that appellee while pretending to act for appellants did not act in good faith towards them and in their interests. In the forenoon he represented to them that the "interested parties" would not pay more than $3300 for the property and that they would have to decide at once.

Appellee knew that the $2000 mortgage on appellants' home would be due in a few days and added to this was their necessity to sell the home to raise the money to complete the March settlement on the eighty-five-acre tract; that they would have to do this to save their equity in the farm. This put appellee in a position to take advantage of the situation and force them to act. Faced with this situation, they could see no other way out to save what they had in the deal. That appellee did profit to their disadvantage is shown by the fact that a few hours later he sold the property to the Smiths for $4500, a profit to appellee of $1200. He owed appellants a duty to act fairly and in their behalf. He had advised the buying of the eighty-five-acre farm and knew how appellants proposed to finance it—by getting a loan on the home and one on the farm. Buying for himself while pretending to be buying for another and his concealment of the true facts do not comport with a situation where the parties dealt at arm's length. Appellee should not be allowed to profit from it.

It is difficult to reconcile the actions of appellee in the deal with the good faith and fair dealing he owed the appellants.

When appellee was submitting the offers on the Fairfield property good faith and fair dealing demanded that he lay the facts before the prospective sellers. Certainly they had the right to be informed who was buying their property. Instead, it could be readily inferred from the evidence that he deceived appellants as to contacts and offers as to interested parties, pretending he was selling to them when he and his wife were such interested parties and were secretly purchasing the same.

We hold that the relationship of appellee towards appellants was a matter for the jury to pass upon.

V. Appellants charge that in the entire transaction the acts and dealings of appellee amounted to a fraud upon them and that because of such fraud they were prejudiced.

We will call attention to some cases from this court where such question was involved. In the case of Lumpkin v. Snook, 63 Iowa 515, 19 N.W. 333, it is stated that fraud involves any act, omission or concealment which involves a breach of legal duty, trust or confidence, and is injurious to another. In the early case of Mansfield v. Watson, 2 (Clarke)

Iowa 111, it was stated that fraud is of various kinds and generally consists either of misrepresentations or concealment of material facts. Fraud may consist of concealment. Bogle v. Goldsworthy, 202 Iowa 764, 211 N.W. 257; Sherman v. Smith, 185 Iowa 654, 169 N.W. 216; Boileau v. Records & Breen, 165 Iowa 134, 144 N.W. 336; Rorebeck v. Van Eaton, supra; Leonard v. Omstead, 141 Iowa 485, 119 N.W. 973; Lavalleur v. Hahn, 152 Iowa 649, 132 N.W. 877, 39 L. R. A., N. S., 24; Bracken v. Jackson, 159 Iowa 424, 140 N.W. 892; Brown & Co. v. Cash, 165 Iowa 221, 145 N.W. 80.

The situation in the cited case of Rorebeck v. Van Eaton, supra, in some respects is quite similar to that in the present case. Suit was brought against an agent, and therein it was charged that while purporting to act for a buyer he made the purchase himself and then sold to the plaintiff representing that the seller's price was $1500, and obtained settlement. Later plaintiff learned that the seller's price was but $1100. In the suit recovery for the $400 was allowed and this court affirmed. The main issue was that of fraud and false representation, all denied by defendant, the agent. On such issue this court said at page 84 of 90 Iowa, 694 of 57 N.W.:

"While the defendant denies all fraud and false representations, and claims that he was acting only for himself, we think the evidence very clearly shows that he undertook to act as plaintiff's agent, and so led plaintiff to believe. There is no question but that the relation of principal and agent existed between the parties. Such being the fact, it needs no citation of authorities to show that the defendant practiced a fraud upon the plaintiff, whereby he was induced to pay four hundred dollars more for the land than was asked for it by the owners. The defendant knowing that the plaintiff was relying upon him to purchase the land for him as his agent, proceeded to buy it himself for the one thousand, one hundred dollars, and sell it to plaintiff for one thousand, five hundred dollars. The plaintiff had a right to rely upon his agent's representations, and did not know of their falsity until long after the transaction had been completed."

The holding in the cited cases has been approved in later decisions of this court.

760

Fraud may be committed by a suppression of the truth as well as by the suggestion of falsehood. 23 Am. Jur., Fraud and Deceit, section 76; 37 C. J. S., Fraud, section 1; 2 Bouvier's Law Dictionary, Rawle's Third Rev., 1306; Oswego Starch Factory v. Lendrum, 57 Iowa 573, 10 N.W. 900, 42 Am. Rep. 53; Copper Process Co. v. Chicago Bonding & Ins. Co., 3 Cir., Pa., 262 F. 66, 8 A. L. R. 1477; Daly v. Showers, 104 Ind. App. 480, 8 N.E.2d 139; Bundesen v. Lewis, 291 Ill. App. 83, 9 N.E.2d 327.

It is the right of a party to a contract to know with whom he deals unless he consents to deal with an agent in behalf of an undisclosed principal. He has a right to rely upon the representations made as to the identity of the other party to the contract. New York Brokerage Co. v. Wharton, 143 Iowa 61, 119 N.W. 969; Ellsworth v. Randall, 78 Iowa 141, 42 N.W. 629, 16 Am. St. Rep. 425; Knight v. Cooley, 34 Iowa 218.

In the recent case of Vermeulen v. Meyer, 238 Iowa 1033, 29 N.W.2d 232 (a specific performance case), in discussing the right of a seller to know with whom he is dealing we said that a party to a contract has a right to know with whom he deals, and approved the holding in the New York Brokerage Co. v. Wharton case, supra.

The record shows that at no time did appellee suggest to appellant Popejoy who the "interested parties" were. We think that it was his duty to reveal this fact to Popejoy. He alleged that he was "agent" for his wife. Under the rule laid down in the cases cited above appellants had a right to be informed who the interested parties were. It is a salutary rule that one selling has a right to know who is buying. To conceal that fact from the seller could be construed as a fraudulent act. Under the record in this case a jury might so find.

We hold that the issues as above set forth under the record should have been submitted to the jury.—Reversed and remanded.

BLISS, C.J., and HALE, GARFIELD, WENNERSTRUM, SMITH, MULRONEY, and HAYS, JJ., concur.

OLIVER, J., concurs in result.